**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Alfred F. MEROLLA, Appellee.**

**Commonwealth of Pennsylvania, Appellee,**

v.

**Alfred F. Merolla, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 2006.

Filed Sept. 28, 2006.

Elmer D. Christine, Asst. Dist. Atty., Stroudsberg, for Com.

George W. Westervelt, Jr., Stroudsberg, for Merolla.

BEFORE: STEVENS, GANTMAN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 The Commonwealth and Alfred F. Merolla appeal respectively from orders [1] entered August 9 and August 10, 2005 relating to Merolla's obligation to register as a sexually violent predator under the Pennsylvania Registration of Sexual Offenders Statute,[2] commonly known as "Megan's Law II." The August 9th order denies by operation of law the Commonwealth's post-sentence motion, while the

---

1. We consolidate these appeals *sua sponte. See Commonwealth v. Galletta,* 864 A.2d 532, 533 n. 1 (Pa.Super.2004). Although the Commonwealth technically appeals from Merolla's judgment of sentence, its claims on appeal are made against the trial court's August 9th order.

2. 42 Pa.C.S.A. §§ 9791–9799.

August 10th order directs that upon his release, Merolla shall register with state police for life. The procedural posture of this matter requires us to decide, *inter alia:* (1) whether Pennsylvania Rule of Criminal Procedure 721 allows the Commonwealth to appeal the denial of its post-sentence motion by operation of law because the trial court did not rule on it within 120 days; and (2) whether guilty pleas to two separate counts of indecent assault,[3] entered at the same time, constitute two separate convictions under Section § 9795.1(b)(1) of Megan's Law II. For the following reasons, we vacate both orders and remand.

¶ 2 Merolla's *nolo contendere* pleas to two counts of indecent assault and one count of statutory sexual assault[4] stemmed from his attacks on three victims, each a girl under the age of sixteen. Two of the victims were sisters, D.V., eleven years old, and S.V., eight years old for whom, in 1995, Merolla was hired as a piano instructor. During the piano lessons, Merolla fondled and kissed them. Although the piano lessons were terminated, Merolla re-established contact with the family sometime between 1999 and 2001, offering a free place to live in exchange for their mother's taking care of his parents and cleaning the house. While the family resided with Merolla's parents, he touched the girls' breasts, buttocks, and vaginal areas. He also made sexual comments to both girls, including offers of money to have sex with him, and suggested that their encounters be videotaped to sell on the Internet. One of the girls claimed that Merolla forcibly attempted to have intercourse with her but was unsuccessful.[5]

¶ 3 The third victim, M.R., was the eight year old daughter of a family whom Merol-la befriended in regard to the purchase of property. He offered to teach the child yoga and drawing, and M.R. complained that during some of his visits, Merolla touched her breasts, buttocks, and vaginal area, and that he rubbed his penis against her buttocks while both were fully clothed.

¶ 4 After his plea, the trial court ordered Merolla to be assessed by the Pennsylvania Sexual Offenders Assessment Board (Board) to determine whether he was an SVP under Megan's Law II. Dean Dickson, the member of the Board who made the evaluation, testified that Merolla should be assigned SVP status because he suffered from pedophilia and paraphilia which made him likely to engage in predatory, sexually violent offenses. The defense presented Dr. Robert Gordon, a psychologist who, after conducting objective testing concluded that Merolla should not be classified as an SVP despite his plea to sexual offenses. Finding Dickson's testimony less than credible, the trial court determined that Merolla was not an SVP, and sentenced him to 11½ to 23 months' imprisonment for the statutory sexual assault charge, with two consecutive sentences of 5 to 10 years' probation on each of the indecent assault charges, resulting in an aggregate probationary period of 10 to 20 years. The trial court also imposed the requirement that he register with state police for a period of ten years pursuant to Megan's Law II.

¶ 5 On March 4, 2005, the Commonwealth timely filed a post-sentence motion to modify the sentence, arguing that the court should give Merolla a longer period of incarceration, find him to be a sexually violent predator (SVP), and subject him to lifetime registration under Section

---

3.   18 Pa.C.S.A. § 3126.

4.   18 Pa.C.S.A. § 3122.1.

5.   There is some confusion as to which girl reported the attack.

9795.1(b)(1).[6] On August 9, 2005, 158 days after the Commonwealth filed its motion, the clerk of courts entered an order denying the motion by operation of law. On the following day, August 10th, the trial court nevertheless entered an order *sua sponte* increasing Merolla's term of registration with police to lifetime. Merolla appealed, raising the following issue for our review:

[DID] THE CLERK'S AUGUST 9, 2005 PA.R.CRIM.P. 720(D)(1) [7] ORDER [DEPRIVE] THE TRIAL COURT OF JURISDICTION TO ACT ON THE COMMONWEALTH'S MOTION TO MODIFY SENTENCE[?]

■ (Merolla's Brief at 4).[8] Merolla asserts that the trial court's order of August 10, 2006 was entered beyond the 120 days allowed by Pennsylvania Rules of Criminal Procedure Rule 720(B)(3)(a). We agree.

¶ 6 Rule 721(C) provides that in cases where the defendant has not filed a post-sentence motion, if the trial court fails to decide a post-sentence motion filed by the Commonwealth within 120 days, "the motion shall be deemed denied by operation of law." Pa.R.Crim.P. 721(C)(2). Indeed, this Court has stated that a modification order filed beyond the 120–day period set forth by Rule 720 is a legal nullity. *See Commonwealth v. Bentley*, 831 A.2d 668, 670 (Pa.Super.2003); *Commonwealth v. Santone*, 757 A.2d 963, 966 (Pa.Super.2000), *appeal denied*, 564 Pa. 730, 766 A.2d 1247 (2001). In *Bentley*, more than

150 days after the appellant filed a motion to modify his sentence the trial court granted his request for a new trial. *Bentley, supra* at 668–69. This Court reversed the trial court's order and concluded that "the trial court's inability to render a ruling on [the appellant's] motion within the prescribed time period divested the court of jurisdiction to render a decision at a later date." *Id.* at 670. "The purpose of this rule is to promote the fair and prompt disposition of all issues relating to guilty pleas, trial, and sentence by consolidating all possible motions to be submitted for trial court review, and by setting **reasonable but firm time limits** within which the motion must be decided." *Id.* at 669 (quoting Pa.R.Crim.P. 720(B)(3), *Comment*) (emphasis in *Bentley*). In *Santone*, this Court held that under Rule 720 the trial court may not *sua sponte* extend the 120 day limit. *See Santone, supra* at 965.[9]

¶ 7 Here, on March 4, 2005, the Commonwealth filed a post-sentence motion. The 120th day thereafter was Saturday, July 2, 2005. Because Monday, July 4, 2005 was a holiday, the trial court had until July 5, 2005 to amend Merolla's sentence. *See* 1 Pa.C.S.A. § 1908. However, the court issued its order on August 10, 2005.[10] Thus, the court's order was not filed within the 120–day time period prescribed by Rule 721(C)(2). Because the motion was properly denied by operation of law and the court could not extend the time limit for rendering decision, its subse-

---

**6.** The trial court in its opinion incorrectly refers to 42 Pa.C.S.A. § 9795.1(b) as "42 PS. C.S.A. § 9791.1(b)."

**7.** We note there is no subsection (D)(1) to Rule 720. Nonetheless, because the Commonwealth filed the motion to modify sentence, it is Rule 721 that controls.

**8.** The Commonwealth did not file a brief in Merolla's appeal.

**9.** Indeed, the court may extend the 120–day period only upon motion **by the defendant**, for good cause to shown. *See* Pa.R.Crim.P. 720(B)(3)(b).

**10.** The trial court's order was dated August 10, 2005 and time-stamped August 12, 2005.

quent modification order is a legal nullity. *See Bentley, supra; Santone, supra.* Thus, we vacate the court's August 10th order.

■ ¶ 8 We now consider the Commonwealth's appeal from the order of August 9, 2005, denying its post-sentence motion. However, before considering the merits of the Commonwealth's appeal, we must determine whether it complies with the Rules of Criminal Procedure. Rule 1410, the predecessor to Rules 720 and 721 addressed post-sentence motion procedures as they apply to both defendants and the Commonwealth. When Rule 1410 was re-codified as Rule 720 in 1993, Rule 721 was created to clarify procedures for the Commonwealth's challenges to sentences.[11] Pa.R.Crim.P. 721, *Comment.* While Rule 720 includes a subsection that specifically provides a defendant thirty days to appeal from an "entry of the order denying the motion by operation of law in which the judge fails to decide the motion," Pa.R.Crim.P. 720(A)(2)(b), a parallel subsection is conspicuously absent from Rule 721. However, for reasons discussed below, we believe that Rule 721 does allow the Commonwealth to appeal the denial of a post-sentence motion by operation of law.

¶ 9 Rule 721(D)(1) directs the clerk of courts to notify the parties once the Commonwealth's motion for modification is denied by operation of law. Pa.R.Crim.P. 721(D)(1)(a), (b). "If the defendant has not filed a post-sentence motion, the Commonwealth's notice of appeal shall be filed within 30 days of the entry of the order disposing of the Commonwealth's motion pursuant to paragraph (C)(2)." Pa. R.Crim.P. 721(B)(2)(b)(ii). Paragraph (C)(2), in turn, directs the trial court to decide the Commonwealth's motion within 120 days, or else "the motion shall be deemed denied by operation of law." Pa. R.Crim.P. 721(C)(2). Thus, while Rule 721 does not have a parallel subsection to Rule 720(A)(2)(b), when read as a whole, by implication Rule 721 allows the Commonwealth thirty days to file an appeal. We note that a contrary finding would render unappealable the denial of a Commonwealth motion by operation of law, and we have discovered no relevant authority to support such a policy. Here, on August 9, 2005, pursuant to Rule 721(D)(1), the clerk of courts entered an order denying the Commonwealth's post-sentence motion by operation of law. Therefore, the Commonwealth had 30 days to file an appeal, and its August 11th appeal was timely. *See* Pa.R.Crim.P. 721(B)(2)(b)(ii). Accordingly, we consider the merits of the Commonwealth's claims.

¶ 10 On appeal, the Commonwealth presents the following issues for our review:

WHETHER THE [TRIAL] COURT ABUSED ITS DISCRETION AND/OR COMMITTED AN ERROR OF LAW

---

11. In *Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962, 973 (2003) (*Williams II*), our Supreme Court has held that the registration and notification requirements of Megan's Law II do not constitute punishment. This Court has not addressed directly whether legally compelled but non-punitive behavioral prescriptions such as reporting and registration are to be opposed by means of post-sentence motions for modification of sentence. In *Commonwealth v. Lipphardt,* 841 A.2d 551, 553 (Pa.Super.2004), for example, this Court found proper the Commonwealth's appeal from the denial of its motion to modify sentence challenging the trial court's refusal to assign SVP status to the appellee. While we find the post-sentence motion a convenient method of bringing before the trial court objections to both the assignment of SVP status and the refusal to do so, the question remains whether the omission of procedural steps necessary to avoid waiver of sentencing claims brings the same results in these situations.

IN FAILING TO FIND [MEROLLA] A SEXUALLY VIOLENT PREDATOR[?]

WHETHER THE [TRIAL] COURT ABUSED ITS DISCRETION AND/ OR COMMITTED AN ERROR OF LAW IN FAILING TO FIND THAT [MEROLLA'S] CONVICTIONS MANDATE LIFETIME REGISTRATION PURSUANT TO MEGAN'S LAW[?]

(Commonwealth's Brief at 4).

█ ¶ 11 The Commonwealth claims the court erred in not designating Merolla an SVP under Megan's Law II, contending that its burden of proof was satisfied by Dickson's testimony identifying Merolla as an SVP, and citing Dickson's conclusion that Merolla met the criteria for SVP status because he suffered from mental abnormalities, specifically pedophilia and paraphilia. The Commonwealth further argues that Merolla's expert witness was not trained in identifying sexual offenders. We disagree.

█ ¶ 12 Our standard of review is well settled:

[I]n reviewing the sufficiency of the evidence regarding the denial of SVP status, we will reverse the trial court only if the Commonwealth has presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute is satisfied. Where, as here, the trial court has provided specific findings of fact, we will review the record to determine whether the record supports the findings of fact and then review the legal conclusions made from them. If it appears based on all of the evidence viewed in the light most favorable to the appellee as the verdict winner on the issue of SVP classification, that an SVP classification can be made out in a clear an convincing manner, then we will be obliged to reverse the denial of the SVP designation.

*Lipphardt, supra* at 555. "The clear and convincing standard requires evidence that is 'so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.'" *Commonwealth v. Plucinski,* 868 A.2d 20, 25 (Pa.Super.2005) (quoting *Commonwealth v. Maldonado,* 576 Pa. 101, 838 A.2d 710, 715 (2003)).

¶ 13 To deem an individual an SVP, the Commonwealth must show the two factors set forth in the definition of sexually violent predator, that he was: (1) convicted of a sexually violent offense as set forth in Section 9795.1; and (2) determined to be a sexually violent predator under Section 9795.4 "due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." *See* 42 Pa.C.S.A. § 9792. Here, Merolla pleaded guilty to two counts of indecent assault, which is an offense listed in Section 9795.1. Thus, he meets the first component of being an SVP. *See* 42 Pa.C.S.A. §§ 9792, 9795.1.

¶ 14 Consideration of the second component requires review of the following Section 9795.4 factors:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b).

¶ 15 The fundamental questions in determining SVP status are whether the sexual offense was the result of a mental defect or personality disorder and the extent to which the offender is likely to reoffend. *Plucinski, supra* at 26. Section 9795.4, set forth above, also provides the criteria by which such likelihood may be gauged. *Id.* Furthermore, "SVP status does not automatically apply to persons who commit sexual offenses against children." *Commonwealth v. Meals*, 842 A.2d 448, 454 (Pa.Super.2004), *appeal granted*, 583 Pa. 661, 875 A.2d 1074 (2005). The Commonwealth's burden is not lessened if the defendant refuses to meet with the person conducting the SVP assessment. *Id.* A finding that the person conducting

the SVP assessment is credible does not necessarily lead to the conclusion that the Commonwealth has satisfied the clear and convincing standard. *Lipphardt, supra* at 558. Instead, it is for the court to determine if a defendant is an SVP, and "a factfinder is free to believe 'all, part or none' of the evidence presented." *Commonwealth v. Krouse*, 799 A.2d 835, 838 (Pa.Super.2002) (quoting *Commonwealth v. Vetrini*, 734 A.2d 404, 407 (Pa.Super.1999)), *appeal denied*, 573 Pa. 671, 821 A.2d 586 (2003). The trial court retains its fact-finding power when it reviews the totality of the evidence, including the report by the State Sexual Offenders Assessment Board. *Lipphardt, supra* at 555 n. 5. Thus, the trial court here acted well within its authority in finding that Dickson's "demeanor while testifying was not convincing." (Trial Court Opinion, filed 9/7/05, at 4).

¶ 16 Moreover, even if we were to accept Dickson's testimony as credible, we hold that the Commonwealth did not provide clear and convincing evidence demonstrating that Merolla was likely to re-offend because he suffered from a mental defect or personality disorder. *See Plucinski, supra.* Importantly, Dickson testified that Merolla's case did not satisfy several of the criteria in Section 9795.4 supporting SVP classification: he is above 53 years of age, which indicates a low risk of recidivism; he did not exceed the means necessary to commit the offense; and he did not display unusual cruelty during the commission of the crime. (*See* N.T. Megan's Law Hearing, at 17–20, 25); 42 Pa.C.S.A. § 9795.4(a)(1)(ii), (iv), (b)(3)(i). Further, Dickson did not indicate that Merolla had exhibited any prior mental health problems or deviant sexual behavior, (*see* N.T. Megan's Law Hearing, at 22); 42 Pa. C.S.A. § 9795.4(b)(3)(iii)-(iv), nor was he under the influence of drugs or alcohol

during the commission of these offenses. (*See* N.T. Megan's Law Hearing, at 25); 42 Pa.C.S.A. § 9795.4(b)(3)(ii). Dr. Gordon testified that the MMPI–2 [12] test administered to Merolla did not reveal any propensity towards violence, cruelty, sadism, predatory behavior, or any form of hostile behavior. (*See* N.T. Megan's Law Hearing, at 64). Thus, we affirm the trial court's finding that the Commonwealth did not present clear and convincing evidence that Merolla should be classified as an SVP.

¶ 17 The Commonwealth next contends that Merolla should be subject to lifetime registration under Section 9795.1(b)(1) of Megan's Law II because he pleaded *nolo contendere* to two separate counts of indecent assault, albeit at the same plea hearing. The Commonwealth argues he thus has two convictions of that offense for purposes of Section 9795.1. We agree.

¶ 18 The applicable standard of review is well settled: the "application of a statute is a question of law, and our standard of review is plenary." *Commonwealth v. Baird,* 856 A.2d 114, 115 (Pa.Super.2004). When interpreting a statute, the Statutory Construction Act dictates our approach. *See* 1 Pa.C.S.A. § 1921; *Baird, supra* at 115. "[T]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly . . ." *Id.* "[T]he best indication of legislative intent is the plain language of a statute." *Commonwealth v. Bradley,* 575 Pa. 141, 834 A.2d 1127, 1132 (2003).

¶ 19 Our review of relevant authority has produced no case that discusses whether simultaneous pleas should be considered as multiple convictions or as one single conviction for registration and notification purposes of Megan's Law II. However, several Supreme Court cases discussing the legislative intent of the so-called "Three Strikes Statute" [13] and Megan's Law II are instructive.

¶ 20 In *Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185 (2005), our Supreme Court considered the mandatory minimum sentence requirement of the Three Strikes Statute, *id.* at 186, which imposes a sentence of no less than ten years on any individual who is convicted of a second crime of violence, and is found to be a high risk, dangerous offender. *Id.* Individuals convicted of two or more such crimes of violence will be sentenced to a minimum of at least twenty-five years' imprisonment. *Id.* In May of 1997, Shiffler pleaded guilty to three separate charges of burglary, and in June of 2002, he pleaded guilty to another such charge, unrelated to any of the previous charges. *Id.* at 187. The Commonwealth argued that he should be sentenced as a third-time offender because he committed four separate burglaries. *Id.* at 188. However, after considering the structure, history, and operation of the Three Strikes Law, the Court decided that Shiffler should be sentenced as a second-time rather than a third-time offender. *Id.* at 196. The Court opined that the statute required the following sequence of events: first offense; first conviction; first sentencing; second offense; second conviction; and second sentencing. *Id.* at 192.

**12.** The MMPI–2 "is a psychological assessment designed to aid in the diagnosis of personality disorders. It is comprised of questions which evaluate thoughts, emotions, attitudes, and behavioral traits. The assessment characterizes an individual's personality strengths and weaknesses, and may identify personality disturbances or neurological problems, which cause mental deficits." *Commonwealth v. Mitchell,* 576 Pa. 258, 839 A.2d 202, 209 n. 6 (2003).

**13.** 42 Pa.C.S.A. § 9714.

The mandatory minimum sentence would be imposed at the second sentencing only if the first conviction occurred before the second offense. *Id.* This sequencing conformed to the legislative intent of the Three Strikes Statute, which implements a philosophy based on the notion that "the point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretical effects of penal discipline." *Id.* (quoting *Commonwealth v. Dickerson,* 533 Pa. 294, 621 A.2d 990, 992 (1993)). "If the heavier penalty prescribed for the second violation ... is visited upon the one who has not had the benefit of the reproof of a first conviction, then the purpose of the statute is lost." *Shiffler, supra* at 192 (quoting *Dickerson, supra* at 992). The Supreme Court concluded that Shiffler must be considered a second-time offender because he had only one opportunity to reform himself. *Shiffler, supra.* at 195. This conclusion, also avoided the anomaly of a defendant's being sentenced as a third-strike offender without first having been sentenced as a second-strike offender. *Id.* at 194.

¶ 21 In *Williams II, supra,*[14] our Supreme Court considered the constitutionality of requiring SVPs to register with state police and undergo counseling, and state police to notify community members of the whereabouts of SVPs. *Id.* at 965. The Court analyzed the legislature's intent in enacting Megan's Law II, and found the policy underlying registration and notification to be the promotion of public safety. *Id.* at 972 (quoting *Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616, 619 (1999)). "[T]he legislature's stated intent was to provide a system of registration and notification so that relevant information would be available to state and local law enforcement officials in order to protect the safety and general welfare of the public." *Williams II, supra* at 972 (quoting *Gaffney, supra* at 619). Neither the registration nor notification component of Megan's Law II is considered additional punishment. *Williams II, supra* at 973 (quoting *Gaffney, supra* at 619).

¶ 22 The salient portion of the statute provides: "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)"[15] shall be subject to lifetime registration. 42 Pa.C.S.A. § 9795.1(b)(1). However, the Three Strikes Statute applies "[w]here the person had at the time of the commission of the current offense **previously** been convicted of two or more such crimes ..." 42 Pa.C.S.A. § 9714(a)(2) (emphasis added). Thus, the language of Megan's Law II is distinguishable from the language of the Three Strikes Statute as Megan's Law II does not require a previous conviction. Moreover, the legislative intent behind Megan's Law II is distinct from that of the Three Strikes Statute. Whereas Megan's Law II is based on concern for public safety, the Three Strikes Statute, although

**14.** In 1999, our Supreme Court found the original version of Megan's Law unconstitutional. *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593 (1999). In 2003, in the above *Williams II* case, our Supreme Court found the revised Megan's Law, commonly known as Megan's Law II, to be constitutional. *Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962 (2003). These two cases are commonly referred to as *Williams I* and *Williams II,* but are not related and do not involve the same defendant.

**15.** Subsection (a) lists the following offenses: 18 Pa.C.S.A. § 2901 (kidnapping), § 2910 (luring child into motor vehicle), § 3124.2 (institutional sexual assault), § 3126 (indecent assault), § 4302 (incest), § 5902(b) (prostitution), § 5903(a) (obscene and other sexual materials and performances), § 6312 (sexual abuse of children), § 6318 (unlawful contact with minor), and § 6320 (sexual exploitation of children).

it also implicates public safety, is directed to heightening punishment for criminals who have failed to benefit from the effects of penal disciple, *see id.* at 196, while Megan's Law II.[16]  *See Williams II, supra* at 973;  *Shiffler, supra* at 196.

¶ 23 The sequence of events described in *Shiffler*—first offense, first conviction, first sentencing, second offense, second conviction, second sentencing—does not apply to Megan's Law II based on a literal reading of the statute.  *Compare Shiffler, supra* at 192,  *with*  42  Pa.C.S.A.  §§ 9791–9799.  Thus, it is irrelevant that Merolla had not been sentenced for his first offense before the commission of his second crime.  *See Williams II, supra* at 972.  Moreover, the intent of the legislature is better served by subjecting Merolla to heightened registration requirements because the public would continue to be notified of his whereabouts after the initial ten-year registration period.  As already stated, this heightened registration is not an additional punishment.  *See id.* at 973.

■ ¶ 24 Finally, we address the term of Merolla's probation, which we find to be an illegal sentence.  *See Commonwealth v. Aponte*, 579 Pa. 246, 855 A.2d 800, 812 (2004), *cert. denied*, 543 U.S. 1063, 125 S.Ct. 886, 160 L.Ed.2d 792 (2005) (stating sentence not supported by authority is illegal). "Challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by the Superior Court."  *Commonwealth v. Johnson*, 873 A.2d 704, 708 (Pa.Super.2005), *appeal denied*, 584 Pa. 720, 887 A.2d 231 (2005).

¶ 25 The trial court imposed two consecutive terms of probation for Merolla's inde-

cent assault charges, each five to ten years, "for an aggregate probationary period of not less than ten nor more than twenty years." (*See* Trial Court Opinion at 1).  While the Sentencing Code[17] does not define a term of probation to be finite or "flat," rather than a range of time, we glean such an inference from a reading of the Code as a whole.  In determining a sentence, the Code provides that a court may impose probation, a determination of guilt without further penalty, partial or total confinement, a fine, or county or state intermediate punishment.  42 Pa.C.S.A. § 9721(a).  The statutes relating to partial and total confinement provide that a court shall impose a minimum and a maximum sentence.  42  Pa.C.S.A.  §§ 9755(b), 9756(b).  However, the statute relating to probation orders contains no such limitation, but provide only that the length of probation may not exceed the maximum term for which a defendant could be confined.  *See* 42 Pa.C.S.A. § 9754(a).  Thus, we also remand to the trial court to impose terms of probation consistent with this restriction.

¶ 26 Accordingly, we vacate both the trial court's August 9, 2005 and August 10, 2005 orders and remand for proceedings consistent with this opinion.

---

**16.**  In *Williams II* our Supreme Court determined that the legislative intent embodied in the counseling component of the statute concerned both public safety and recidivism.  *Id* at 979 n. 18.  However, the counseling component is irrelevant here because it is only

required for sexual offenders who are found to be SVPs, and we have affirmed the trial court's finding that Merolla is not an SVP.

**17.**  42 Pa.C.S.A. §§ 9701–9781.