J-S45023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CALEB DANIEL FOX | |
| Appellant | No. 1364 MDA 2014 |

Appeal from the Judgment of Sentence of July 1, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No.: CP-40-CR-0002759-2013

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 20, 2015**

Caleb Daniel Fox appeals the judgment of sentence entered against him on July 1, 2014.  Fox contends that the trial court erred in failing to award him credit for one day of time that he served during the pendency of his charges.  He further contends that the trial court incorrectly classified him as a Tier III offender under Pennsylvania's Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10, *et seq*.  Solely because we find that Fox's former claim requires the relief requested, we vacate Fox's judgment of sentence, and remand for resentencing.

The trial court has provided the following factual and procedural history for this matter:

---

[*]    Former Justice specially assigned to the Superior Court.

[Fox] was sentenced . . . on July 1, 2014[,] after pleading guilty on April 4, 2014 to [counts one through seven] of Docket Number 2759 of 2013, Possession of Child Pornography, each a felony of the third degree[,[1]] and to Count Eight (8), Criminal Use of a Communications Facility, a felony of the third degree.[2]

On or about June 4, 2013, [Fox's] computer was identified by Special Agent Nicole Laudeman of the Pennsylvania Attorney General's Office as having a potential download candidate (source) for at least seventeen (17) files of investigative interest with child pornographic content. On this same day, Special Agent Laudeman was able to make direct contact to [Fox's] computer . . . to download five (5) video files[, each of which depicts] children under the age of eighteen (18) years engaged in sexual acts and/or poses and is defined as child pornography in violation of [18 Pa.C.S. § 6312(d)]. The videos contained on [Fox's] computer include very young female child victims appearing to be between the ages of six (6) and eleven (11) years . . . and include a variety of sexual intercourse, oral and anal sex between adult men and the female children. Additionally, [Fox] was in possession of additional child pornography files depicting children appearing to be as young as three (3) years old engaged in sexual acts as his computer contained a file named "File 11: (pthc) toddler daughter cum 3y (rare file) bebita y papi.avi." On or about August 5, 2013, agents from the Pennsylvania Office of the Attorney General executed a search warrant upon [Fox's] residence . . . and previewed child pornography files found on four (4) laptop computers and one (1) desktop computer throughout the residence. [Fox] was subsequently arrested and charged with the above-mentioned crimes . . . . [Fox] pled guilty before this Court on April 4th, 2014 and was sentenced on July 1, 2014.[3]

---

[1] *See* 18 Pa.C.S. § 6312(d) (sexual abuse of children – child pornography).

[2] *See* 18 Pa.C.S. § 7512(a).

[3] At sentencing, Fox was not designated a sexually violent predator. However, as noted, *supra*, based upon Fox's conviction of more than one Tier I offense, the trial court designated him a lifetime registrant under SORNA.

[Fox] filed a Motion to Modify Sentence on July 8, 2014[,] which was subsequently denied . . . on July 11, 2014.

[Fox] filed a Notice of Appeal on August 6, 2014[,] and on August 13, 2014, [Fox] was ordered by [the trial court] to file a Concise Statement of [Erros] Complained of on Appeal [pursuant to Pa.R.A.P. 1925(b)]. Additionally, [Fox] filed a Motion to Correct Sentencing Notification to Sexual Assessment Board on August 7, 2014. [Fox] requested that the Sentence Notification Sheet be corrected to reflect that [Fox] was sentenced on Count 7 to four (4) to eight (8) months concurrent to Count 6. [The trial court] granted [Fox's] request for a correction and filed an Amended Order on August 13, 2014 correcting the sentencing error originally sent to the Sexual Offenders Assessment Board ("SOAB"). After an extension of time in which to receive . . . transcripts, [Fox] filed a [timely] Concise Statement of Matters Complained of on Appeal on September [8], 2014 . . . .

Trial Court Opinion ("T.C.O."), 1/3/2015, at 1-3.

Before this Court, Fox raises the following issues:

1. Whether the trial court imposed an illegal sentence by failing to give Mr. Fox credit for time served prior to sentencing?

2. Whether the trial court erred by classifying Mr. Fox as a Tier III sexual offender, pursuant to 42 Pa.C.S. § 9799.14(d)(16) (multiple convictions), and imposing a lifetime registration requirement, where Mr. Fox had no prior convictions and the multiple offenses charged in this case arose from the same course of criminal conduct.

Brief for Fox at 2. For purposes of clarity, we consider Fox's second issue first.

In Fox's second issue, he challenges the application of 42 Pa.C.S. § 9799.14(d)(16) to the circumstances of the case. At stake is whether Fox properly was designated a Tier III offender under SORNA, and, as such, subjected to a lifetime reporting obligation. Subsection 9799.14(d)(16)

identifies as a Tier III offender anyone who has two or more convictions for Tier I or Tier II offenses. *See* 42 Pa.C.S. §§ 979914(b), (c) (respectively). Fox's convictions for sexual abuse of children, standing alone, undisputedly qualify as Tier I sexual offenses, subject to a fifteen-year registration requirement. *See* 42 Pa.C.S. § 9799.14(b)(9). Thus, the question at issue concerns only whether the counts to which Fox pleaded guilty count as multiple offenses for purposes of subsection 9799.14(d)(16). This question of statutory interpretation presents a pure question of law. Thus, our standard of review calls upon us to determine whether the trial court committed legal error; the scope of our review is plenary. *Commonwealth v. McDonough*, 96 A.3d 1067, 1070 n.9 (Pa. Super. 2014); *see Commonwealth v. Merolla*, 909 A.2d 337, 345 (Pa. Super. 2006) ("[T]he application of a statute is a question of law, and our standard of review is plenary." (internal quotation marks omitted)).

In effect, Fox argues that the multiple offense Tier III designation is intended by the legislature to address "serious offenders and true recidivists," rather than "first-time, nonviolent offenders." Brief for Fox at 8. In support of this argument, Fox cites only one case, *A.S. v. Pennsylvania State Police*, 87 A.3d 914 (Pa. Cmwlth. 2014), which, as a decision of the Commonwealth Court, does not bind this Court. *See Petow v. Warehime*, 996 A.2d 1083, 1088 n.1 (Pa. Super. 2010).

In *A.S.*, the Commonwealth Court considered a *mandamus* petition brought by an individual who, over a decade earlier, had pleaded guilty to

several counts associated with his sexual involvement with a sixteen-year-old girl when the petitioner had been twenty-one. Because Pennsylvania's age of consent was sixteen, the sexual relationship by itself was not criminal. However, at the time of the relationship, **photographing** a sixteen-year-old in sexual circumstances was a crime, and the petitioner had pleaded guilty to several counts associated with that activity. At sentencing, the Commonwealth Court found, the defense, the prosecution, and the trial court itself all appeared to understand that the petitioner's guilty plea incurred only then-effective Megan's Law's ten-year reporting requirement. *See A.S.*, 87 A.3d at 916-917 (citing 42 Pa.C.S. § 9795.1 (expired)). However, more than ten years after his release, when the petitioner asked the Pennsylvania State Police ("PSP") to release him from his reporting obligations, PSP refused to do so, contending that, because the petitioner had pleaded guilty to more than one ten-year registration offense, he was subject to lifetime reporting requirements under now-expired subsection 9795.1(b)(1), which, as does the subsection at issue in the instant case, required lifetime registration for those with two or more convictions of offenses that, by themselves, would require the offender to register for a shorter duration. *Compare* 42 Pa.C.S. § 9795(b)(1) (requiring lifetime registration and reporting by "an individual with two or more conviction of . . . the offenses set forth in subsection (a)") *with* 42 Pa.C.S. § 9799.14(d)(16) (requiring lifetime registration and reporting by an

individual with "[t]wo or more convictions of offenses listed as Tier I or Tier II sexual offenses").

The petitioner maintained that he was entitled to relief because his offenses "stemmed from a single criminal act, criminal episode or course of conduct, *i.e.*, causing the photographing of a minor in a sexual act." *Id.* at 918. He argued, *inter alia*, that upholding his lifetime registration would be tantamount to violating the Equal Protection Clause of the United States Constitution insofar as it would leave the duration of similarly situated defendants' reporting obligations up to the prosecution: Given a single criminal episode, whether a defendant was subject to a ten-year or lifetime reporting requirement could hinge upon whether the Commonwealth opted to file one or more charges associated with the conduct in question.

Based primarily upon its review of the Supreme Court's plurality decision in *Commonwealth v. Gehris*, 54 A.3d 862 (Pa. 2012), the Commonwealth Court agreed. Reviewing at length the opinions in support of both affirmance and reversal in *Gehris*,[4] the Commonwealth Court sided with the justices who wrote in favor of reversal. Specifically, the Commonwealth Court adopted the view "a defendant convicted of 'two or more' subsection (a) offenses is subject to the lesser sanction of the ten-

---

[4] Because the equally divided, six-member *Gehris* Court failed to reach a majority disposition, the Superior Court's decision in that case was affirmed *per curiam*, and neither *Gehris* opinion has precedential effect. *See A.S.*, 87 A.3d at 919-20.

year registration requirement so long as it is clear that the offenses were part of the same criminal course of conduct." **A.S.**, 97 A.3d at 922 (quoting **Gehris**, 54 A.3d at 879 (opinion in support of reversal by Todd, J.)). The court determined that the petitioner's photographs of his minor paramour, upon which the charges to which he pleaded guilty had been based, constituted a single criminal episode. Consequently, the Commonwealth Court held that the petitioner was entitled to be removed from PSP's sexual offender registration, having successfully fulfilled his ten-year obligation.

Although the reasoning was considerably more detailed than is related here, **see A.S.**, 87 A.3d at 918-22, one feature that distinguishes **A.S.** from the instant matter is clear: The Commonwealth Court's determination that the petitioner's photography of one young woman in connection with one consensual sexual relationship differs from the instant case, in which the record indicates that the individual counts against Fox were based upon various electronic files depicting numerous individual victims.

More important, though, is the fact that our decision in **Merolla**— which, unlike **Gehris** and **A.S.**, binds this Court to the extent that it is relevant to the instant matter[5]—provides a more robust basis upon which to

---

[5] **See Commonwealth v. Beck**, 78 A.3d 656, 659 (Pa. Super. 2013) ("This panel is not empowered to overrule another panel of the Superior Court."). Notably, in passing, the **A.S.** court observed that the **Gehris** opinion in support of affirmance adopted an approach similar to this Court's approach in **Merolla**, but implicitly disagreed with that approach in adopting the reasoning underlying the opinion in support of reversal. **See A.S.**, 87 *(Footnote Continued Next Page)*

distinguish this case from **A.S.** and its adoption of the **Gehris** Court's opinion in support of reversal. In **Merolla**, at three separate informations resolved in one proceeding, Merolla pleaded *nolo contendere* to two counts of indecent assault, each arising from sexual assault against one of two sisters, and, at the same proceeding, one count of statutory sexual assault against a third, unrelated victim. **Merolla**, 909 A.2d at 340. After a series of procedural steps following the court's acceptance of his plea and the entry of Merolla's judgment of sentence, the trial court determined that Merolla was subject to Megan's Law II's lifetime reporting obligations because he pleaded *nolo contendere* to two separate counts of indecent assault. **Id.** at 340-41 (citing 42 Pa.C.S. § 9795(b)(1) (expired)).

This Court agreed. We began by acknowledging the absence of authority on the question whether "simultaneous pleas should be considered as multiple convictions or one single conviction for registration and notification purposes" under Megan's Law II. **Id.** at 345. Finding no directly on-point authority, we turned for guidance to our Supreme Court's review of similar circumstances in the context of Pennsylvania's Three Strikes Statute,

*(Footnote Continued)* _____

A.2d at 922 (noting that, if the opinion in support of reversal's reasoning were not adopted, "then having a ten-year requirement under the former subsection (a) and a separate reporting requirement under the former subsection (b) is meaningless").

42 Pa.C.S. § 9714(a)(2),[6] specifically the Court's decision in ***Commonwealth v. Shiffler***, 879 A.2d 185 (Pa. 1985).

In ***Shiffler***, the Court considered whether the defendant should be sentenced as a second or third-time offender under section 9714. The issue arose because the defendant, charged with burglary, resisting arrest, and other charges arising from a single criminal episode, had pleaded guilty several years earlier in an unrelated case to three separate charges of burglary. ***Id.*** at 187. The defendant argued that the prior burglary charges, because the sentences were imposed at the same proceeding, should count as only one offense for purposes of three-strikes analysis. The Superior Court had disagreed, directing the trial court to sentence the defendant as a third-time offender, because, it held, each of the earlier burglaries counted as a separate offense. ***Id.*** at 187-88.

The ***Shiffler*** Court disagreed, finding that the Commonwealth's favored interpretation would lead to an absurd result, in violation of our canons of construction. ***Id.*** at 194.

> At the time of his concurrent sentencing for his three prior burglaries . . ., [the defendant] was not, in fact, sentenced as a second-time offender. Indeed, because he committed all of the prior burglaries before he was convicted or sentenced for any of them, he **could not have been** sentenced as a second-time offender . . . . The anomaly of [the defendant's] situation is

_____

[6] Although section 9714 has been amended several times since the Court decided ***Shiffler***, the amendments have not modified subsection 9714(a)(2) in any relevant particular.

- 9 -

thus: while he has not ever been—nor **could** he have been—sentenced as a second-strike offender, a reflexive application of subsection 9714(a)(2) would subject him to sentencing as a third-strike offender. . . . We do not believe that such a result was intended by the General Assembly . . . .

As to the recidivist philosophy, this and other Pennsylvania appellate courts have repeatedly recognized that[] the point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity **despite the theoretically beneficial effects of penal discipline**. Particularly salient here is the implicit link between enhanced punishment and behavioral reform, and the notion that the former should correspondingly increase along with a defendant's foregone opportunities for the latter. Any other conception would ignore the rationale underlying the recidivist philosophy, *i.e.*, that the most culpable defendant is one, who after being reproved, still hardeneth his neck. Just as the second-time offender enhancement under subsection (a)(1) is meant to punish a defendant more severely when that defendant has offended before and has been afforded an opportunity to reform, so too is the third-time offender enhancement under subsection (a)(2), which increases the minimum punishment to twenty-five years, obviously meant to punish a defendant more severely when he has already foregone **two** opportunities to reform himself. The generally recognized purpose of such graduated sentencing laws is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law.

*Id.* at 195 (emphasis in original; citations and internal quotation marks omitted). Thus, the Court held that the defendant, having had only one, not two, experiences with the penal system should not be punished as severely as an offender who had two prior rehabilitative opportunities.

In **Merolla**, this Court found the reasoning in **Shiffler** illuminating to the distinct context of Megan's Law II's then-applicable registration scheme for multiple offenders. Noting that the Supreme Court had deemed the

policy underlying registration and notification to be the promotion of public safety, rather than penal in nature, *see Commonwealth v. Williams*, 832 A.2d 962 (Pa. 2003), we found meaning in a critical distinction between the language used in the Three Strikes Statute and the relevant multiple-offense language in Megan's Law II:

> The salient portion of [Megan's Law II] provides: "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)" shall be subject to lifetime registration. 42 Pa.C.S. § 9795(b)(1). However, the Three Strikes Statute applies "[w]here the person had at the time of the commission of the current offense **previously** been convicted of two or more such crimes . . . ." 42 Pa.C.S. § 9714(a)(2) (emphasis added). Thus, the language of Megan's Law II is distinguishable from the language of the three Strikes Statute[,] as Megan's Law II does not require a previous conviction. Moreover, the legislative intent behind Megan's Law II is distinct from that of the Three Strikes Statute. Whereas Megan's Law II is based on concern for public safety, the Three Strikes Statute, although it also implicates public safety, is directed to heightening punishment for criminals who have failed to benefit from the effects of penal [discipline] . . . .

*Merolla*, 909 A.2d at 346-47 (citations modified). Thus, unlike in *Shiffler*, this Court deemed it "irrelevant that Merolla had not been sentenced for his first offense before the commission of his second crime." *Merolla*, 909 A.2d at 347. We further explained that "the intent of the legislature is better served by subjecting Merolla to heightened registration requirements because the public would continue to be notified of his whereabouts after the initial ten-year registration period." *Id.*

We find no material distinction between this case and *Merolla*, notwithstanding the slightly different fact pattern and the enactment of

- 11 -

SORNA in lieu of Megan's Law III, the successor statute to the Megan's Law II. As noted, *supra*, the SORNA provision requiring individuals with multiple Tier I offenses to be subject to Tier III's lifetime registration requirement does not differ from the parallel provision that we reviewed in **Merolla**. Similarly, the policies and legislative intent embodied in those statutes have not changed. Furthermore, in this case the separate counts, albeit charged at one docket, arose from the possession of multiple files involving at least several victims. In light of these considerations, Fox's exclusive reliance upon **A.S.**, a decision that does not bind this Court in any event, is unavailing. Accordingly, the trial court did not err as a matter of law in subjecting Fox to SORNA's lifetime registration requirement upon the basis that Fox pleaded guilty to numerous distinct Tier I offenses.

We now turn to Fox's first issue, in which he contends that the trial court erroneously denied his motion for one day of credit against his sentence for time served. Fox correctly notes that he is entitled to time credit against his judgment of sentence "for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed," including credit for time spent in custody before and during trial, as well as custodial time served during the pendency of an appeal. **See** 42 Pa.C.S. § 9760(1). Fox also correctly asserts that a failure to award time that is due under section 9760 implicates the legality of sentence. **See Commonwealth v. Johnson**, 967 A.2d 1001, 1003 (Pa. Super. 2009). We review challenges to the legality of sentence *de novo*, and the scope of our

review is plenary. ***Commonwealth v. Wolfe***, 106 A.3d 800, 802 (Pa. Super. 2014).

Fox contends that the trial court failed to award him time served for one day, August 5, 2013, the day of his arrest. The Commonwealth concedes the point, agreeing that "[t]he trial court incorrectly denied Fox's request for credit for that day," Brief for the Commonwealth at 7, and averring that Fox is entitled to one day of heretofore uncredited time. The trial court disposed of this particular challenge as follows: "After thorough review of the record in its entirety, along with the Pre-Sentence Investigation, [the trial court] can find no factual merit to [Fox's] allegation and therefore . . . cannot further discuss this erroneous claim of error." T.C.O. at 5.

Our review of the record indicates that Fox was arrested and incarcerated on August 5, 2013, when bail was set at $50,000. The record indicates that, although Fox did not post bail initially, a bail bondsman arranged for Fox's release on August 9, 2013. Our review further shows no evidence that Fox was credited for the time he served on August 5, 2013. Based upon the state of the record, and in light of the Commonwealth's lack of opposition to Fox's request for one day of credit for time he evidently served on August 5, 2013, we conclude that the trial court erred in failing to credit Fox with one day against his sentence. Consequently, we vacate Fox's sentence and remand for the trial court to resentence Fox providing due credit for the one day he seeks.

- 13 -

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/20/2015</u>