J-A12022-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE THEODORE REYNOLDS, | : | |
| | : | |
| Appellant | : | No. 1908 MDA 2013 |

Appeal from the Judgment of Sentence June 28, 2013,
Court of Common Pleas, Juniata County,
Criminal Division at No. CP-34-CR-0000118-2011

BEFORE:  BOWES, DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.:                          **FILED JUNE 10, 2015**

George Theodore Reynolds ("Reynolds") appeals from the judgment of sentence entered following his convictions of twenty-five counts of sexual abuse of children - child pornography ("possession of child pornography"), 18 Pa.C.S.A. §§ 6312(d)(1).  Following our review, we affirm.

The relevant facts underlying this appeal may be summarized as follows.  Reynolds and his now-estranged wife, Doris, married in 2002. Shortly thereafter, Doris obtained custody of two of her grandchildren, who were three and four years old.  Almost a decade later, in January 2011, an investigation into Reynolds began when a child that Reynolds and Doris used to babysit revealed to his mother that Reynolds had touched him

inappropriately.[1]  The child's mother contacted Juniata County Children and Youth Services ("CYS") and informed CYS caseworker Karen Imes of her son's allegations and an investigation ensured.  Ms. Imes interviewed Reynolds and Doris separately. Gretchen Swank of the Pennsylvania State Police was present for both interviews.  During her interview, Doris revealed that that she caught Reynolds viewing pornography of teenaged boys on multiple occasions on a computer in their home.  Based on this and other statements made by Doris, Trooper Swank secured a search warrant for Reynolds' home.  As part of the search, the police confiscated three computers from the residence.  Analyses of the hard drives revealed thirty-two images of suspected child pornography; specifically, images involving males who appeared to be underage.  The investigation also turned up allegations of sexual assault from the granddaughter that lived with Reynolds and Doris as well as a male foster child that lived with them for approximately one year.

Reynolds was charged with three counts of aggravated indecent assault; thirty-two counts of possession of child pornography; and nine counts of indecent assault.  Reynolds filed several pre-trial motions seeking, inter alia, suppression of the images obtained from the computers, severance of the charges, and dismissal of the charges for violation of

---

[1] At the time this investigation began, Doris and the grandchildren had moved out of the home she shared with Reynolds.

Pa.R.Crim.P. 600. The trial court denied all motions and the case proceeded to a two-day jury trial. The jury acquitted Reynolds on all aggravated indecent assault and indecent assault charges, as well as seven counts of possession of child pornography. He was convicted of the remaining twenty-five counts of possession of child pornography. The trial court sentenced him to one to four months of incarceration on each count, resulting in an aggregate sentence of two years and one month to eight years and four months of incarceration. Reynolds filed post-sentence motions, which the trial court denied. This timely appeal followed.

Reynolds has raised the following issues for our review:

A. Did the trial court err in denying [Reynolds'] motion to suppress the evidence seized pursuant to a search warrant where the affidavit for the issuance of the warrant failed to provide sufficient or accurate information, contained irrelevant information that as stale, contained misleading and/or inaccurate statements, lacked requisite specificity and omitted the complete statements of an estranged spouse?

B. Did the trial court err in denying [Reynolds'] motion for the severance of the two distinct type [sic] of cases sets forth in the criminal information as no common scheme or any other exception under Pa.R.E. 404 was established and the evidence of each case constituted impermissible, highly prejudicial evidence?

C. Did the trial court err in denying [Reynolds'] motion to dismiss pursuant to Pa.R.Crim.P. 600?

D. Did the trial court err in failing to enter a judgment of acquittal on the offense of possession or control of

child pornography inasmuch as the evidence was not sufficient to prove the elements of the crime?

E. Sentencing Issues:

1. Did the consecutive sentences imposed for each of the twenty-five counts of possession of child pornography in this case raise the aggregate sentence to an unreasonably excessive level in light of the conduct at issue in this case and [Reynolds'] circumstances?

2. Did the trial court commit an error of law by determining that [Reynolds] is subject to the registration requirement of SORNA, 42 Pa.C.S.A. § 9799, et. seq.?

Reynolds' Brief at 8.[2]

Reynolds first challenges the trial court's denial of his motion to suppress the items recovered during the execution of the search warrant, arguing that the warrant was invalid because it was not supported by probable cause.

> Under the federal and state constitutional prohibitions of unreasonable searches and seizures, both the United States Supreme Court and [the Pennsylvania Supreme] Court have consistently held that, subject to certain exceptions, a search is constitutionally invalid unless it is conducted pursuant to a warrant issued by a neutral and detached magistrate and supported by probable cause. **Mincey v. Arizona**, [] 98 S.Ct. 2408, [] (1978); **Commonwealth v. Jones**, [] 988 A.2d 649, 655 ([Pa.] 2010). Probable cause exists where, based upon a totality of the circumstances set forth

---

[2] We have reordered Reynolds' issues for purposes of the disposition of this appeal.

in the affidavit of probable cause, including the reliability and veracity of hearsay statements included therein, "there is a fair probability that ... evidence of a crime will be found in a particular place." *Commonwealth v. Johnson*, [] 42 A.3d 1017, 1031 ([Pa.] 2012) (internal quotation marks omitted). … On appeal, [the appellate] [c]ourt affirms the decision of the suppression court unless it commits an error of law or makes a factual finding without record support. [*Commonwealth v.*] *Briggs*, [] 12 A.3d [291,] 320.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1063-64 (Pa. 2013).

Reynolds argues that Trooper Swank mischaracterized Doris' statement in the affidavit attached to the application for the search warrant and therefore impermissibly fabricated probable cause to support the issuance of a search warrant. Reynolds points out that in her police report, Trooper Swank states that Doris observed Reynolds viewing pornography of "men" that appeared "teenaged" and "close to underage," whereas in the affidavit of probable cause, Trooper Swank stated that Doris reported observing Reynolds watching pornography of "young males[] … who appeared to be in their teens." Reynold's Brief at 18-19. This is deficient, Reynolds contends, because Trooper Swank "didn't say the age and certainly did not say **underage** or **child pornography**." *Id.* at 21 (emphasis in the original). Reynolds argues that Trooper Swank took an equivocal statement and turned it into a more definitive declarative that Reynolds was viewing pornographic images of minors. More succinctly, "[Reynolds] asserts that had Trooper Swank used … Doris' exact statement as set forth in Trooper

- 5 -

Swank's police report, there was no probable cause to believe there was child pornography … and the warrant would not have been issued." *Id.* at 22.

The trial court rejected this argument. It found that that Reynolds' argument was "merely an argument of semantics. There is no difference between the qualification of 'appeared to be in their teens' and 'appearing teenaged.'" Trial Court Opinion, 5/30/14, at 2. We can find no abuse of discretion in the trial court's determination. We agree that Trooper Swank's statement as recorded in her police report is substantively the same as her statement in the affidavit of probable cause submitted with the warrant application.

We also find no merit to Reynold's claim that because Doris did not affirmatively state that she saw child pornography, the warrant was rendered deficient. *See* Reynolds' Brief at 19 ("Trooper Swank failed to advise the issuing judge that [] Doris **never** stated she saw child pornography.") (emphasis in the original). The factual allegations in Trooper Swank's affidavit of probable cause were supported by statements recorded in her police report following her interview with Doris, and that statement was sufficient to establish a fair probability that evidence of a crime, specifically, possession of child pornography, would be found in Reynolds'

home.[3]   This is all that was required for the warrant to issue.  **Lyons,** 79

A.3d at 1064.  There is no merit to this claim.

Reynolds next argues that the trial court erred in denying his motion

for severance of the "two distinct type [sic] of cases set forth in the criminal

information[.]"  Reynolds' Brief at 25.

> "A motion for severance is addressed to the sound
> discretion of the trial court, and ... its decision will
> not be disturbed absent a manifest abuse of
> discretion. **The critical consideration is whether
> the appellant was prejudiced by the trial
> court's decision not to sever. The appellant
> bears the burden of establishing such
> prejudice**."

**Commonwealth v. Mollett**, 5 A.3d 291, 305 (Pa. Super. 2010) (emphasis

added).  Prejudice in this context is defined as "that which would occur if the

evidence tended to convict appellant only by showing his propensity to

commit crimes, or because the jury was incapable of separating the

evidence or could not avoid cumulating the evidence."  **Commonwealth v.**

**Boyle**, 733 A.2d 633, 637 (Pa. Super. 1999).

Rule of Criminal Procedure 583 provides that "[t]he court may order

separate trials of offenses or defendants, or provide other appropriate relief,

---

[3] Reynolds includes brief argument alleging that the information used to establish probable cause was stale and that there were omissions or ambiguities that render the search warrant invalid.  Reynolds' Brief at 23-24. Reynolds did not raise these bases for relief in any of his three pre-trial motions, and so he cannot raise them on appeal.  **See Commonwealth v. Santiago**, 980 A.2d 659, 666 n.6 (Pa. Super. 2009) ("[A] new and different theory of relief may not be successfully advanced for the first time on appeal."); Pa.R.A.P. 302(a).

if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. When considering a motion to sever,

> [t]he court must determine whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Kunkle*, 79 A.3d 1173, 1190 (Pa. Super. 2013) (quoting *Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988)).

With regard to the first prong of this test, the trial court found that the evidence would be admissible in separate trials under the "common plan, scheme or design" exception to the general prohibition against evidence of other bad acts. Trial Court Opinion, 6/10/14, at 3. Generally, evidence of bad acts is inadmissible to prove that a defendant acted in conformity with those acts or to demonstrate a propensity to commit crimes. *Commonwealth v. Brown*, 52 A.3d 320, 325 (Pa. Super. 2012). "However, evidence of bad acts is admissible pursuant to our rules of evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident." *Id.* (citing Pa.R.E. 404(b)(2))[4].

---

[4] This rule provides, in relevant part, as follows:

In this case, the trial court found that the "common scheme or design" exception applied because the child pornography "focused on bath and shower scenes" and the sexual assaults were alleged to have occurred while Reynolds was bathing the alleged victims. Trial Court Opinion, 6/10/14, at 3. We do not agree. "The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under [the common scheme or plan] exception." *Commonwealth v. Einhorn*, 911 A.2d 960, 967 (Pa. Super. 2006).

We addressed the applicability of this exception in *Commonwealth v. Aikens*, 990 A.2d 1181 (Pa. Super. 2010), in which the defendant was appealing his convictions of corruption of a minor, endangering the welfare of a child, and indecent assault. The victim was the defendant's fourteen-year-old daughter. At trial, the defendant's older daughter testified that he

---

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

raped her when she was fifteen years old. The defendant argued that the trial court erred in finding that the older daughter's testimony was admissible as evidence of a common scheme or plan. We reasoned as follows:

> In the case at bar, we believe that the fact pattern involved in the two incidents was markedly similar. In both cases, the victims were of like ages: T.S. was fourteen years old, and V.B. was fifteen years old. Both victims were [the defendant's] biological daughters. [The defendant] initiated the contact during an overnight visit in his apartment. He began the sexual abuse by showing the girls pornographic movies. The assaults occurred in bed at night. While [the defendant] raped V.B. and indecently assaulted T.S., T.S. stopped [the defendant] from disrobing her and committing the more serious sexual assault. In addition, [the defendant] mimicked the grinding movements of sexual intercourse on T.S. in order to sexually gratify himself. These matching characteristics elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern. Hence, we reject [the defendant's] position that we are pigeonholing sexual abuse cases to such an extent that any prior instance of child abuse would be admissible in a subsequent child abuse prosecution. ***See also Commonwealth v. Hughes***, [] 555 A.2d 1264 ([Pa.] 1989) (evidence about prior rape correctly allowed at rape-murder trial since crimes were committed in similar geographic location, at similar time, characteristics of victim matched, and defendant used same method of attack). As was the case in Hughes, the similarities at issue herein were "not confined to insignificant details that would likely be common elements regardless of who committed the crimes." ***Id.*** at 1283.

***Id.*** at 1185-86.

- 10 -

In contrast, the crimes at issue in this case do not bear many similarities. They share only the common denominator of a bathing scenario, and that was present in only some of the pornography. The pornography exclusively depicted teenaged boys, while the assaults were allegedly carried out on an adolescent, prepubescent male and female, and in one instance, a very young male child. The record does not provide a high degree of similarity between these crimes; accordingly, we conclude that the trial court erred in its ruling.

Nonetheless, this error does not entitle Reynolds to relief. As set forth above, the "critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever[,]" *Mollett*, 5 A.3d at 305, and prejudice in this context is found "if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence." *Commonwealth v. Boyle*, 733 A.2d 633, 637 (Pa. Super. 1999). Reynolds cannot meet this standard. As the jury acquitted him of all charges related to alleged improper touching of the three minors, there is no basis upon which to conclude that the evidence related to these charges caused him prejudice. That is to say, given this outcome, it is evident that the jury was capable of separating the evidence, the jury did not cumulate the evidence, and it did not convict Reynolds of possession of child pornography based on a belief that he has a propensity to commit crimes, in

that it rejected the claim that he in fact committed the other crimes. Because he cannot establish prejudice in his context, his claim cannot succeed.

We now consider Reynolds' claim that the trial court erred when it denied his motion to dismiss based on Pa.R.Crim.P. 600 ("Rule 600"). "Our standard of review relating to the application of Rule 600 is whether the trial court abused its discretion. Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. We must view the facts in the light most favorable to the prevailing party." *Commonwealth v. Baird*, 919 A.2d 258, 260 (Pa. Super. 2007).

> To determine whether dismissal is required under Rule 600, a court must first calculate the mechanical run date, which is 365 days after the complaint was filed. Rule 600(C) addresses situations where time can be excluded from the computation of the deadline. Case law also provides that a court must account for any "excludable time" and "excusable delay." Excludable time is delay that is attributable to the defendant or his counsel. **Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence. … The only occasion requiring dismissal is when the Commonwealth fails to commence trial within 365 days of the filing of the written complaint, taking into account all excludable time and excusable delay.**

*Commonwealth v. Colon*, 87 A.3d 352, 358 (Pa. Super. 2014) (internal citations and quotations omitted) (emphasis added).

Addressing Reynolds' motion to dismiss, the trial court found as follows:

> With regards the Rule 600 Motion, [Reynolds] specifically argues, that the unavailability of Trooper Swank for several months due to maternity leave prevented [Reynolds] from his right to a speedy trial. Pursuant to Pennsylvania Rules of Criminal Procedure, a trial in which a written complaint is filed against the defendant must commence within 365 days from the date on which the complaint is filed. Pa.R.Crim.P. 600. However, the rule also states that any periods of delay throughout the proceedings are attributable to the Commonwealth only when the delay is caused by the Commonwealth and the Commonwealth has failed to exercise due diligence in preventing the delay.
>
> The Court discussed these time frames at length during the Post-Sentencing Hearing. Tr. Omnibus Pre-Trial Hearing 38:18-43:11 (February 8, 2013). Charges were initially filed on May 19, 2011. Seventy-eight (78) days passed until [Reynolds] filed his first Omnibus Motion on August 5, 2011. A ruling on this [m]otion was issued October 5, 2011, however other [m]otions were filed on October 4, 2011. Thus, this additional delay is attributable to [Reynolds] until November 30, 2011, when the Commonwealth asked for an extension of time in answering the motion. Forty-two [] days passed before the motion was finally heard on January 12, 2012 and later decided on January 23, 2012. During this time, the prosecuting officer began her restricted duty on January 16, 2012. This restricted duty continued until May 17, 2012, at which time the Trooper went on maternity leave. The Trooper remained on leave until July 30, 2012, thus tolling a period of 188 days on behalf of the Commonwealth. Fifty [] additional days passed before [Reynolds] filed further [o]mnibus motions on September 18, 2012. All other time that passed between September 2012 and the date of trial is attributable to

- 13 -

[Reynolds] as he had outstanding motions awaiting decision. Thus, a total of 358 days attributable to the Commonwealth passed before trial commenced. As such, the Commonwealth brought [Reynolds] to trial within the proper time frame.

[Reynolds] … argues that because [Trooper Swank] was unavailable for such a long time period that the Commonwealth failed to exercise due diligence. The Trooper was on restricted duty from January 16, 2012 to May 17, 2012 during which time she was not allowed to drive. *Id.* at 42:7-12. She was then on maternity leave from May 17, 2012 to July 30, 2012. *Id.* Although this delay was caused [by] a witness for the Commonwealth, there is no failure to exercise due diligence. Pregnancies and the health risks that's [sic] sometimes accompany them are a common fact of life and it is not the fault of the Commonwealth that this Trooper's pregnancy happened to fall during the time frame of this prosecution. This delay could have happened during any of the Trooper's cases and to prevent such delays, the Trooper would be required to sacrifice her personal life for her job and the Court. As such, the Commonwealth did not fail to exercise due diligence and the Court did not err in denying the Motion.

Trial Court Opinion, 5/30/14, at 4-5.

On appeal, as in the trial court, Reynolds takes issue only with the trial court's determination not to charge the time that Trooper Swank was on restricted duty and maternity leave against the Commonwealth. *See* Reynolds' Brief at 49. We find no error in the trial court's determination with regard to that aspect of the delay. The complications that arose due to Trooper Swank's pregnancy, including the requirement that she be placed on restricted duty (including the prohibition that she not drive) and maternity

leave, where beyond the Commonwealth's control, and therefore properly categorized as excusable delay. *Colon*, 87 A.3d at 358.

Reynolds cites no authority nor develops any substantive argument in support of his position. *See* Reynolds' Brief at 49-50. He states only that "the delay [due to Trooper Swank's pregnancy] should not be attributable to [Reynolds] who had otherwise spent significant time in pre-trial detention and was otherwise prepared to go to trial." *Id.* at 49. This summary allegation does not convince us that the trial court abused its discretion. Furthermore, his statement misses the point: the trial court did not assess this time against Reynolds. It clearly found that it was a delay caused by the Commonwealth that was explicitly excused because the cause of the delay was beyond the Commonwealth's control. This issue is without merit.

We now turn to Reynolds' claim that the evidence was insufficient to support his convictions. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is de novo and our scope of review is plenary." *Commonwealth v. Tejada*, 107 A.3d 788, 792 (Pa. Super. 2015) (citation omitted). "We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt." *Id.*

The crime at issue is defined as follows: "Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet,

slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of [eighteen] years engaging in a prohibited sexual act or in the simulation of such act commits an offense." 18 Pa.C.S.A. § 6312(d).  Relevant to this case, "accessing and viewing child pornography over the internet constitutes 'control' of such pornography under 18 Pa.C.S.[A.] § 6312(d)."  *Commonwealth v. Diodoro*, 970 A.2d 1100, 1108 (Pa. 2009).

Reynolds' argument is multifaceted, and we will address each aspect thereof.  He first argues that the evidence is insufficient to support his conviction because "[he] denied that he intentionally or purposefully viewed child pornography."  Reynolds' Brief at 34.  In a similar manner, Reynolds argues that there was no evidence that he "actively sought out or 'downloaded' child pornography" in light of his testimony that the images "were unsolicited or inadvertently viewed" while he was trying to access pornography involving adult males.  *Id.* at 36.  These arguments focus exclusively on Reynolds' testimony and ignore Doris' testimony that on multiple occasions she observed Reynolds viewing pornography involving teenaged males on his computers.  N.T., 3/25/13, at 49-50, 86-87.  It also ignores the testimony of State Trooper Kevin Garhart, an expert in computer forensics, who stated that the pornographic images he recovered from Reynolds' computers had purposely been saved on the computer before they were deleted.  *Id.* at 147.  This evidence, when viewed in the light most

favorable to the Commonwealth, is sufficient to establish that he knowingly possessed the prohibited images.

Reynolds also argues that because the Commonwealth could not establish the ages of the males in the pictures by direct evidence, such as birth certificates, it should have been required to establish their ages through expert testimony. Reynolds' Brief at 35. He argues that simply showing the images to the jury was insufficient to establish the ages of the persons in the images. *Id.* at 36. Reynolds is wrong.

For a conviction of this offense, "[p]roof of age, like proof of any other material fact, can be accomplished by the use of either direct or circumstantial evidence, or both" and it need not be established by expert testimony. *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1212 (Pa. Super. 2003). In *Robertson-Dewar*, this Court explicitly rejected the argument that the age of minors in pornographic images must be established by testimony from a pediatrician or other medical expert based upon "body development, maturity, physical appearance, etc." *Id.* We reasoned,

> Given the anonymity of the internet, the identity of children depicted and their whereabouts are frequently unknown. Thus, conventional means of proving age such as birth certificates or testimony of a relative are usually unavailable. To require law enforcement officials to track down and identify the children depicted in order to successfully prosecute a child pornography case would rip the teeth out of the child pornography statute and destroy its efficacy as

- 17 -

a preventive measure in the sexual exploitation of children. Therefore, the legislature has vested the trier of fact with the function of determining the age of the child depicted and further allows for this element to be sufficiently established through competent expert testimony in close cases. This Commonwealth has long maintained that expert testimony is not required in obscenity prosecutions, and the determination is to be made on a case-by-case basis. *See Commonwealth v. Rodgers*, [] 327 A.2d 118, 121 ([Pa.] 1974) (stating "[o]ur decision today is cognizant of the continuing duty of this Court ... to make an ad hoc, case-by-case determination of whether trial exhibits are legally obscene."). Rather, we have consistently held since 1974 that "printed publications and photographs themselves are enough evidence for a jury, in applying our statewide standard, to determine whether the average person would find the materials appealing to prurient interests." *Long v. 130 Market St. Gift & Novelty*, [] 440 A.2d 517, 522 ([Pa. Super.] 1982) (citing *Rodgers, supra*). *See also, Commonwealth v. Croll*, [] 480 A.2d 266 ([Pa. Super.] 1984) (holding Commonwealth need not produce expert testimony of statewide community standards). As is the case with determining obscenity under *Rodgers*, we see no reason why the trier of fact[,] based on everyday observations and common experiences[,] cannot assess the age of the children depicted with the requisite degree of certainty to satisfy the standard of proof beyond a reasonable doubt.

*Id.* at 1213.

In the present case, the jury viewed the images and assessed the ages of the people therein. Pursuant to *Robertson-Dewar*, this was an entirely adequate and appropriate method for the Commonwealth to establish the age of the males in the images found on Reynolds' computers.

Reynolds additionally argues that the evidence was insufficient to establish that he "was involved" with the images because they were found in unallocated space on the computers' hard drives and there was no indication of when the images were viewed, who viewed them, or how they were deleted. Reynolds' Brief at 36. This argument again ignores the testimony from Doris, which established that she caught Reynolds viewing pornographic material on the computers from which the images were recovered, and that after the CYS investigation began, he told her he deleted the images. N.T., 3/25/13, at 49-50, 58, 86-87, 168-70. Reynolds' argument fails.

We have reached Reynolds' final two issues, which challenge the sentence the trial court imposed. He first argues that his sentence is excessive. This claim challenges discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011) (citation omitted).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A.

§ 9781(b). *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

*Id.* "A substantial question exists where the statement sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." *Commonwealth v. McNabb*, 819 A.2d 54, 56 (Pa. Super. 2003).

As noted above, Reynolds timely filed his appeal. He raised this claim in his post-sentence motion, *see* Post-Sentencing Motion, 7/8/13, at 8, and thereby preserved it for appeal. He has included a statement pursuant to Pa.R.A.P. 2119(f) in his appellate brief. In this statement, Reynolds challenges his sentence as excessive in light of the fact that the trial court ordered each sentence to run consecutively and "the aggregate sentence resulted in a sentence in excess of the Sentencing Guidelines." Reynolds' Brief at 17. We conclude that this presents a substantial question so as to invoke our review. *See Commonwealth v. Mastromarino*, 2 A.3d at 587 n.5 (Pa. Super. 2010).[5]

Our standard of review for sentencing claims is as follows:

---

[5] Reynolds also challenges his sentence is excessive because the trial court failed to consider his "character, absence of a sexually violent predator designation, [] age, health, non-likelihood of re-offending and all other mitigating factors." Reynolds' Brief at 17. This claim does not present a substantial question so as to invoke our review. *Commonwealth v. Bullock*, 868 A.2d 516, 529 (Pa. Super. 2005), *aff'd*, 913 A.2d 207 (Pa. 2006) ("[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."). Accordingly, we will not consider this aspect of his excessiveness challenge.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination: '[T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.' 42 Pa.C.S.A. § 9721(b). Thus, under 42 Pa.C.S.A. § 9721(b), a sentencing court must formulate a sentence individualized to that particular case and that particular defendant.

*Commonwealth v. Clarke*, 70 A.3d 1281, 1287 (Pa. Super. 2013) (internal citations omitted).

Reynolds argues that the imposition of consecutive sentences is excessive in his case because he was only a viewer of child pornography, rather than a creator or purveyor of child pornography. Reynolds' Brief at 43. To the extent that Reynolds is arguing that the trial court was under some misconception as to the nature of the offenses he committed, he is mistaken. The trial court considered the particular nature of Reynolds' offenses when it formulated the sentence. It stated, "often times in cases such as this where you [sic] it's something viewed off the internet, you don't have a known victim. I think … it is a different scenario if you are luring a child into your home and taking pictures or something like that. That's not

being alleged here whatsoever." N.T. 6/28/13, at 33-34. The trial court was well aware of the conduct underlying Reynolds' convictions.

Furthermore, the record reveals that the trial court specifically considered the effect that running the sentences consecutively would have on Reynolds' aggregate sentence, and concluded that it would be appropriate in this case because it would "take[] into account each and every count that [he] w[as] convicted of" and also adequately take into consideration the need for protection of the public and Reynolds' rehabilitative needs. *Id.* at 31, 35. The trial court also acknowledged that in some cases, the imposition of consecutive sentences would result in a disproportionally lengthy sentence, but concluded that this is not such a case. *See id.* at 31-32, 34-35. It was within the trial court's discretion to fashion a sentence that addressed each conviction individually. Reynolds' dissatisfaction with that decision does not give this Court the authority to disturb the trial court's determination.

The record further reveals that the trial court explicitly took Reynolds' lack of criminal history into account, as well as the need for "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs" of Reynolds, as it was required to. *See id.* at 31-35. In short, the trial court considered all factors that it was required to consider; it considered Reynolds' lack of criminal history and the nature of the offenses; and it

weighed the effect consecutive sentences would have on Reynolds' aggregate sentence, and found the sentence to be appropriate. As we can see no abuse of discretion, we cannot disturb the trial court's determination.

Finally, Reynolds asks whether the trial court erred when imposing lifetime registration requirements pursuant to section 9799.15(a) of the Sexual Offender Registration and Notification Act ("SORNA").

We begin by noting that SORNA contains a tier system, in which the crimes that are subject to its registration requirements are divided into three tiers. 42 Pa.C.S.A. §§ 9799.14  Persons convicted of a Tier I, II or III offense are subject to SORNA's registration requirements for fifteen years, twenty-five years, and life, respectively.  42 Pa.C.S.A. §§ 9799.15.  SORNA further provides that when a person is convicted of more than one Tier I or Tier II offenses, the offenses are classified as Tier III offenses. 42 Pa.C.S.A. § 9799.14(d)(16).

The offenses of which Reynolds was convicted, possession of child pornography, is a Tier I offense.  Reynolds argues that because he was convicted of all twenty-five counts of this crime at the same time, the trial court erred in applying the lifetime registration requirements to him. Reynolds' Brief at 44.

In **Commonwealth v. Merolla**, 909 A.2d 337 (Pa. Super. 2006), this Court addressed the same challenge under a predecessor to SORNA, Megan's Law II.  In that case, the defendant pled nolo contendere to three

Tier I offenses. The trial court sentenced him to a term of incarceration and also required that he be subject to the Megan's Law registration requirements for ten years following his release from prison. *Merolla*, 909 A.2d at 340-41. Both the Commonwealth and the defendant appealed from the judgment of sentence. Of relevance, the Commonwealth argued that the trial court should have subjected Merolla to lifetime registration requirements "because he pleaded nolo contendere to two separate counts of indecent assault, albeit at the same plea hearing[,]" and therefore that he had two convictions of that offense for purposes of the lifetime registration requirement. *Id.* at 345. We agreed, reasoning as follows:

> The salient portion of the statute provides: "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)" shall be subject to lifetime registration. 42 Pa.C.S.A. § 9795.1(b)(1). However, the Three Strikes Statute applies "[w]here the person had at the time of the commission of the current offense **previously** been convicted of two or more such crimes ..." 42 Pa.C.S.A. § 9714(a)(2) (emphasis added). Thus, the language of Megan's Law II is distinguishable from the language of the Three Strikes Statute[,] as Megan's Law II does not require a previous conviction. Moreover, the legislative intent behind Megan's Law II is distinct from that of the Three Strikes Statute. Whereas Megan's Law II is based on concern for public safety, the Three Strikes Statute, although it also implicates public safety, is directed to heightening punishment for criminals who have failed to benefit from the effects of penal disciple [sic][.] [*S*]ee [*Commonwealth v.*] *Shiffler,* [] [879 A.2d 185[,] 196 [(Pa. 2005)][.]

> The sequence of events described in **Shiffler**—
> first offense, first conviction, first sentencing, second
> offense, second conviction, second sentencing—does
> not apply to Megan's Law II based on a literal
> reading of the statute. **Compare Shiffler, supra** at
> 192, with 42 Pa.C.S.A. §§ 9791–9799. Thus, it is
> irrelevant that Merolla had not been sentenced for
> his first offense before the commission of his second
> crime. **See** [**Commonwealth v.**] **Williams**[,] [832
> A.2d 962,] 972 [(Pa. 2003)]. Moreover, the intent of
> the legislature is better served by subjecting Merolla
> to heightened registration requirements because the
> public would continue to be notified of his
> whereabouts after the initial ten-year registration
> period. As already stated, this heightened
> registration is not an additional punishment. **See id.**
> at 973.

**Id.** at 346-47.

SORNA contains operative language identical to the portion of Megan's

Law II discussed in **Merolla**, as it provides that "[t]wo or more convictions

of offenses listed as Tier I or Tier II sexual offenses" constitute Tier III

offenses, 42 Pa.C.S.A. § 9799.14(d)(16). There is no requirement of

**previous** convictions. Accordingly, pursuant to **Merolla**, we conclude that

the trial court did not err in imposing lifetime registration requirements.

Reynolds ignores our decision in **Merolla** and focuses his argument on

**Commonwealth v. Jarowecki**, 985 A.2d 955 (Pa. 2009). This reliance is

misplaced. **Jarowecki** did not involve a statute governing registration

requirements for sexual offenders; rather, it involved the proper grading of serial convictions under the Crimes Code. His argument merits no relief.[6]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2015

---

[6] We note that the precise issue raised by Reynolds is pending before the Pennsylvania Supreme Court. *See Commonwealth v. Lutz-Morrison*, ___ A.3d ___, 2015 WL 1579010 (Pa. April 8, 2015). Until the Supreme Court issues its decision, *Merolla* remains binding precedent. *See State Farm Fire & Cas. Co. v. Craley,* 844 A.2d 573, 575 (Pa. Super. 2004) (stating this Court is bound by decisions of other panels of this Court until an en banc panel of this Court or the Supreme Court decides otherwise).

We further note that Reynolds included brief argument challenging the application of SORNA as a violation of the ex post facto clause of the United States Constitution. *See* Reynolds' Brief at 46. Reynolds did not raise this claim in the trial court, and so it has been waived for purposes of appeal. *See Commonwealth v. Haughwout*, 837 A.2d 480, 486 (Pa. Super. 2003) (holding that issues, even of constitutional dimension, are waived if not raised in the court below); Pa.R.A.P. 302(a).