J-A23041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH RUSSELL EHRHART, JR. | : | |
| | : | |
| Appellant | : | No. 383 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 4, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0005083-2017,
CP-06-CR-0005084-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH RUSSELL EHRHART, JR. | : | |
| | : | |
| Appellant | : | No. 384 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 4, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0005083-2017,
CP-06-CR-0005084-2017

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: SEPTEMBER 24, 2021**

Appellant Joseph Russell Ehrhart appeals from the judgment of sentence

of five (5) years to ten (10) years in prison followed by five (5) years of

probation entered in the Court of Common Pleas of Berks County on February

---

[*] Former Justice specially assigned to the Superior Court.

4, 2021, following a negotiated guilty plea to one count each of Sexual Assault and Involuntary Deviate Sexual Intercourse (IDSI).[1, 2] In his sole issue on appeal, Appellant challenges the trial court's determination after a hearing that Appellant met the criteria for a sexually violent predator (SVP) under the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10–9799.41. Following our review, we affirm.

The trial court aptly set forth the relevant procedural history and facts herein as follows:

> On April 17, 2018, [Appellant] entered a negotiated guilty plea in docket 5803-2017 at Count 9 Sexual Assault[1] and in docket 5084-2017 at Count 5 — Involuntary Deviate Sexual Intercourse.[2]

_____

[1] 18 Pa.C.S.A. §§ 3124.1; 3123(a)(7), respectively.

[2] On January 8, 2021, the trial court designated Appellant an SVP at two trial court dockets. The court imposed Appellant's judgment of sentence in two trial court dockets on February 4, 2021. On February 16, 2021, Appellant filed a timely post-sentence motion at each docket, and both motions were denied on March 5, 2021. On March 30, 2021, Appellant's counsel filed two notices of appeal, pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. June 1, 2018), which were docketed in this Court at Nos. 383 MDA 2021 and 384 MDA 2021. Each notice contains both trial court dockets. Pursuant to this Court's policy regarding multiple **Walker** appeals, the instant appeals were consolidated, _sua sponte_, by Per Curiam Order of April 20, 2021.

Moreover, the March 30, 2021, notices of appeal state the appeal is from "the Order of January 8, 2021 finding [Appellant] to be a 'sexually violent predator,' and the Order of March 5, 2021, denying his Post-Sentence Motion for Reconsideration of the former Order." Counsel for Appellant erroneously stated the appeal was from both the January 8, 2021, Order designating Appellant an SVP and the March 5, 2021, Order denying the post-sentence motion, rather than from the February 4, 2021 judgment of sentence. "In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (_en banc_) (citation omitted), _appeal denied_, 800 A.2d 932 (Pa. 2002).

After a court ordered evaluation, the Sex Offender Assessment Board recommended that [Appellant] be found to be a sexually violent predator ("SVP") on June 21, 2018. At the request of defense counsel, the hearing on potential designation as an SVP was deferred while several cases dealing with the constitutionality of SORNA II, following the Pennsylvania Supreme Court's ruling in Muniz,[3] moved through the appellate court process.[4] On April 20, 2020, the Commonwealth requested a hearing for the court to make its determination on [Appellant's] SVP status. On December 23, 2020, a hearing was held to determine if [Appellant] would be determined to be a sexually violent predator under SORNA II (Subchapter H) as defined by 42 Pa.C.S.A. 9799.12. On January 8, 2021, the [c]ourt issued an order finding that the Commonwealth had met their [its] burden of proof and that [Appellant] be designated a sexually violent predator and subject to the notification requirements of SORNA. On February 4, 2021, via a video hearing, the [c]ourt sentenced [Appellant], in accordance with the negotiated plea agreement, to an aggregate sentence of five (5) years to ten (10) years of incarceration followed by five (5) years of probation. [Appellant] was apprised of his SORNA registration requirements at the sentencing hearing. On February 16, 2021, a post sentence motion was filed asking the court to reconsider the sexually violent predator designation. The hearing on the post sentence motion was held on March 3, 2021. The post
sentence motion was denied on March 5, 2021. Notice of appeal was filed by [Appellant] on March 30, 2021. A 1925(b) statement was ordered on April 5, 2021. On April 14, 2021, [Appellant] filed a timely Concise Statement of Errors Complained of on Appeal....

***

FACTS

In docket 5083-2017, [Appellant] admitted that between the dates June 26, 2014 and September 19, 2017, he put his penis inside the victim's mouth and vagina multiple times at the residence at 61 Mildred Avenue in Birdsboro, Pennsylvania beginning when the victim was 16 years old. This victim was [Appellant's] daughter. In docket 5084-2017, [Appellant] admitted that between the dates of January 3, 2013 and May 30, 2017, he put his penis inside the victim's vagina multiple times at the residence at 61 Mildred Avenue in Birdsboro, Pennsylvania as well as other locations in Berks County and Montgomery County,

beginning when the victim was 14 years old. This victim was [Appellant's] stepdaughter. The offenses in these two cases extended over a period of five years on a multitude of occasions.
___

[1] 18 Pa.C.S.A. 3124.1 — F2
[2] 18 Pa. C.S.A. 3123(a)(7) — F1
[3] Commonwealth v. Muniz 164 A.3d 1189 (Pa. 2017) (Plurality) (SORNA requirements have punitive effect pursuant to Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963), and retroactive application constitutes ex post facto violation)
[4] Most specifically Commonwealth v. Butler, 226 A.3d 972 (Pa. 2020) ("Butler II") reviewing the constitutionality of SORNA II's lifetime registration, notification, and counseling requirements applicable to SVPs (Subchapter H); Commonwealth v. Lacombe, 234 A.3d 602 (Pa.2020) review of Subchapter 1; Commonwealth v. Torsilieri, 232 A.3d 567 (Pa.Super.2020) whether Subchapter H registration requirements violates PA constitutional right to reputation.

Trial Court Opinion, filed 5/13/21, at 1-3 (unnumbered).

In his appellate brief, Appellant presents the following issue for our review:

Did the lower court err in designating Appellant as a "sexually violent predator" (SVP) where the Commonwealth failed to show that he has any mental abnormality or personality disorder that would make him likely to engage in predatory sexually violent offenses, as "Other Specified Paraphilic Disorder to adolescents" is not a scientifically or statutorily cognizable abnormality or disorder?

Brief for Appellant at 6 (unnumbered).

A challenge to a trial court's SVP designation is a challenge to the sufficiency of the evidence, for which our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Meals**, 510 Pa. 110, 119, 912 A.2d 213, 218 (2006). When reviewing a trial court's SVP determination, we must view the evidence in a light most favorable to the Commonwealth

and may not re-weigh the evidence or substitute our judgment for that of the trial court. *Id.* *See also Commonwealth v. Baker*, 24 A.3d 1006, 1033 (Pa.Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013). "We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied." *Commonwealth v. Geiter*, 929 A.2d 648, 650 (Pa.Super. 2007).

After a person has been convicted of an offense listed in 42 Pa.C.S.A. § 9799.14, the trial court orders an assessment to be done by the State Sexual Offenders Assessment Board (SOAB) to help determine if that person should be classified as an SVP. An SVP is a person who was convicted of an enumerated offense and "who is determined to be a[n SVP] under Section 9799.24 (relating to assessments)[3] due to a mental abnormality or personality

---

[3] 42 Pa.C.S.A. § 9799.24 entitled "Assessments" provides, in relevant part:

> **(b) Assessment.--**Upon receipt from the court of an order for an assessment, a member of the board as designated by the executive director of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:
>
> > (1)    Facts of the current offense, including:
> >
> > (i) Whether the offense involved multiple victims.

*(Footnote Continued Next Page)*

disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. "The salient inquiry to be made by the trial court is the identification of the impetus behind the commission of the crime and the extent to which the offender is likely to reoffend." **Commonwealth v. Morgan**, 16 A.3d 1165, 1169 (Pa.Super. 2011).

_____

(ii) Whether the individual exceeded the means necessary to achieve the offense.
(iii) The nature of the sexual contact with the victim.
(iv) Relationship of the individual to the victim.
(v) Age of the victim.
(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.
(ii) Whether the individual completed any prior sentences.
(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.
(ii) Use of illegal drugs.
(iii) Any mental illness, mental disability or mental abnormality.
(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b).

In order to show that the offender has a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory.

Furthermore, in reaching a determination, the court must examine the driving force behind the commission of these acts, as well as consider the offender's propensity to reoffend, and the Commonwealth's expert is required to opine in this regard. However, one's risk of re-offending is but one factor to be considered when making an assessment; it is not an "independent element." **Commonwealth v. Stephens**, 74 A.3d 1034, 1038–39 (Pa. Super. 2013). Also, the Commonwealth is not required to prove a "standard of diagnosis that is commonly found and/or accepted in a mental health diagnostic paradigm." **Commonwealth v. Dengler**, 890 A.2d 372, 383 (Pa. 2005).

Herein, Appellant does not dispute that his guilty plea to the charges of Sexual Assault and IDSI constitutes a conviction of a sexually violent offense under 42 Pa.C.S.A. § 9799.14. Instead, Appellant focuses his argument on the position that the trial court erred when it found the Commonwealth had proven by clear and convincing evidence that Appellant is an SVP on the

strength of the testimony of SOAB member Dr. Veronique Valliere who opined Appellant meets the diagnostic criteria for other specified paraphilic disorder to adolescence.

Stressing that he had no prior criminal history, had not been accused previously of sexual impropriety, and after examining the fourteen statutory questions to be considered in the SVP analysis, Dr.Valliere "noted that only five or six potentially had any significant weight in favor of her ultimate conclusion that Appellant is an SVP[,]" Appellant maintains the trial court erred in finding him to be an SVP because the Commonwealth failed to prove by clear and convincing evidence that he has a mental abnormality or personality disorder making him likely to engage in predatory sexually violent offenses.  Brief for Appellant at 18 (unnumbered).

Referencing nineteenth century works of literature, Appellant posits the term "'paraphilia' denotes abnormality and attraction to adolescents [that] is not *per se* abnormal[,]" and further states that, historically, such behavior had never been deemed abnormal.  *Id*. at 14.[4]  Appellant reasons that "[n]or can

_____

[4] Specifically, Appellant cites Jane Austen's Pride and Prejudice, as follows:

> In  Pride and Prejudice, George Wickham, aged around thirty, attempts to seduce or otherwise elope with the fifteen-year-old Georgiana Darcy, basically his stepsister, who consents to elope with him before their plans are thwarted by Mr. Darcy. Wickham later succeeds in seducing or otherwise eloping with Lydia Bennet—also aged fifteen—whom, in a grimly familiar sort

*(Footnote Continued Next Page)*

the criminality of acting upon such an attraction be supposed to indicate a mental abnormality or personality disorder: otherwise all criminals—larcenists, forgers, drug-dealers and so on—would logically, absurdly and insidiously have to be considered to have a mental abnormality or personality disorder." *Id*. at 9.

Appellant maintains "[i]t was never alleged that [he] forcibly raped either victim, though the **affairs** were acknowledged to be nonconsensual in a **legal** sense." *Id*. at 8 (emphasis added). Appellant refers to the victims as "**women** who were sexually developed adolescents at all pertinent periods," and again suggests that they acquiesced in the abuse because his

_____

of "happy" ending, he is societally pressured into marrying in order to avoid complete public disgrace and ostracism. Wickham is a cad, a reprobate, an overall scoundrel, but is considered to be so (by the author and the other characters) purely on account of his mercenary designs on Georgiana and his non-amatory carnal designs on Lydia: his attraction to or seduction of these fifteen-year-olds was not considered depraved because of his victims' adolescence, but for these other reasons. If Jane Austen and genteel 18th century English society—by no means known for their radical sexual liberationism—considered such behavior to be non-deviant, it is hard to argue that Appellant can be considered legally mentally abnormal for doing effectively the same thing, when human biology has not since evolved enough to make a difference: except in Appellant's favor to the extent that women are believed to have taken longer to develop physically back then than they take today. There are countless other examples in the canon, in pre-1980s literature, and an infinity of examples in actual global history, including Western history until fairly recently, of which the above story is just one better-known example.

*Id*. at 15 n. 4 (unnumbered).

actions were only rendered deviant because "at least one of his victims could not **legally** consent" to them. *Id*. at 8-9 (emphasis added). He concludes that "the acts were deviant, or indicative of mental abnormality, simply on account of their illegality," and surmises that "[i]f Appellant's 'acting on' an otherwise normal feeling is what renders him mentally abnormal, then almost all criminals would have to be deemed mentally abnormal." *Id*. at 15-16 (unnumbered).

We find Appellant's suggestion that his urges and actions were "normal" and that his child victims, his own daughter and stepdaughter, were somehow complicit in, or even invited, Appellant's abhorrent abuse to be disingenuous and absurd as well as a clear mischaracterization of Dr. Valliere's testimony.

In support of its finding that Appellant is an SVP, the trial court stated the following:

> The [c]ourt heard testimony from both Dr. Veronique Valliere and Dr. Christopher Lorah. The testimony of Dr. Valliere, even after careful consideration of the testimony and opinions rendered by Dr. Lorah, was sufficient to meet the statutory burden to classify the Defendant as a sexually violent predator. Commonwealth did establish by clear and convincing evidence the required elements for classification. Both experts agreed that the [Appellant] met the predatory prong of the statute. The primary issue was whether [Appellant's] sexual attraction to his adolescent daughter and step daughter [sic] and his inability to maintain volitional control, and acting upon the attraction, rose to the level of a mental abnormality or personality disorder.
> Dr. Veronique Valliere opined that [Appellant] meets the criteria for paraphilic disorder (to adolescents) that served as the impetus to his offending and that he engaged in predatory behavior as delineated in her report[6]. She further opined that his disorder predisposes him to reoffend. Dr. Valliere noted that

- 10 -

sexual attraction to adolescents is not considered deviant but explained that when an attraction turns into behavior that disrupts somebody's life or is causing the individual mental and emotional distress, it becomes a disorder. Not only was [Appellant] in this case attracted to adolescents, but the victims were his teenage daughter and step daughter [sic]. Further, the sexually assaultive behavior continued after it was reported to police and other adults and continued while [Appellant] was under investigation, showing that the disorder overrode his volitional control. His motivation to be sexually involved with these adolescents were [sic] so strong that [Appellant] was willing to risk legal, social, and familial consequences which Dr. Valliere indicated meets the diagnostic criteria for paraphilic disorder. The doctor further described why, as to [Appellant], this disorder was an entrenched acquired condition which, while able to go into remission allowing a person to manage the condition, will always be present and predispose that person to a likelihood of reoffense. Dr. Valliere specifically indicated that it was not the sexual attraction to adolescents that is the disorder, but the fact that the desire rose to a point where it developed into criminal behavior and had life disrupting effects in a destructive way, that escalated the behavioral [sic] from mere arousal to the level of a disorder. Dr. Valliere pointed out that [Appellant] promoted his existing relationships that facilitated his victimization by grooming, swearing them to secrecy, some abuse in the relationship and bribery of the victims.

Dr. Valliere reviewed and considered the report of the defense expert Dr. Christopher Lorah. She discussed the differences in their report and portions with which she both agreed and disagreed. She rejected the idea that the offending was a result of [Appellant's] bipolar disorder. Dr. Valliere said that when diagnosing someone with paraphilic disorder of this type, there should be a conservative view, which comported with the view posed by Dr. Lorah. Ultimately, she stood firm with her opinion that based on the statutory definition, [Appellant] met the qualifications to be designated a sexually violent predator.

Dr. Lorah similarly testified as to his report[7]. He believed [Appellant] did not meet the prong for having a mental abnormality or personality disorder which is required to be proven by clear and convincing evidence to classify a person as a sexually violent predator. Dr. Lorah agreed that [Appellant] satisfied the predatory prong of the statute. He described the diagnosis rendered by Dr. Valliere as being a 'catchall' because the arousal wasn't to one of approximately a dozen specifically delineated types of highly unusual or deviant targets, objects, situations, or

dynamics required for a more specific finding. He did not seem to disagree that [Appellant's] sexual arousal to his adolescent stepdaughter and daughter lasted more than six months and resulted in a significant disruption of his life, emotionally, legally, socially and through victimization of the adolescents which are the hallmarks of a paraphilic disorder. Dr. Lorah opined that the inability to manage a normal arousal to adolescents was rooted in his more established disorder, specifically his bipolar disorder and that he was not predisposed to sex reoffending. He testified that because [Appellant] was not also diagnosed with antisocial disorder, and that his victims were inside the home (as opposed to someone who sexually offends outside of the home), he was less than likely to sexually re-offend.

Merely because two experts have differences in opinions does not mean that one's opinion cannot support the burden of the Commonwealth. The court carefully considered all the testimony and the explanations of both experts in support of their conclusions. After careful consideration, the [c]ourt determined that the Commonwealth had met their [sic] burden of proof and that [Appellant] be designated a sexually violent predator and subject to the notification requirements of SORNA was supported by the testimony presented. There is sufficient evidence of each element of the definition of a sexually violent predator in the record to support the [c]ourt's finding.

_____

[6] Dr. Valliere's report was admitted as Commonwealth Exhibit 1.
[7] Defense Exhibit 1.

Trial Court Opinion, filed 5/13/21, at 4-7 (unnumbered).

The trial court clearly considered the expert opinions of both Drs. Valliere and Lorah and in doing so found the Commonwealth had presented clear and convincing evidence to sustain its finding Appellant is an SVP. Following our review of the record and viewing the evidence in the light most favorable to the Commonwealth as we must, we agree.

In finding Appellant met the diagnostic criteria for a paraphilic disorder, the trial court heard Dr. Valliere's testimony that one's sexual attraction to

adolescents alone is not considered deviant. N.T., 12/23/24, at 14. However, the Dr. Valliere clarified that Appellant's turning his urges into acts that disrupted his life and caused him mental and emotional distress was deviant. She stated that "his motivation to sexually assault an adolescent was so strong that it was—it cannot be described as anything but disordered when he risked legal and social and familial consequences to that. So, obviously, he meets the criteria for that disorder." *Id*. at 14-15.

Dr. Valliere spoke of Appellant's "preexisting relationship with both of the victims through grooming, swearing them to secrecy, some abuse in the relationship, he bribed the victims. And through all of these actions he promoted a relationship that facilitated his victimization." *Id*. at 16. Dr. Valliere also stressed that one has a problematic and uncontrollable disorder when, as here, there is a clear awareness of the consequences of one's action, yet the individual continues to pursue sexual contact with the adolescent. *Id*. at 19. Appellant's belief that he was in love with one of his victims, a belief which "rais[ed] a child up to the level of what in his mind would be a lover," further evinced a problematic sexual disorder. *Id*. at 23.

Ignoring the foregoing and admitting that Dr. Valliere highlighted numerous factors weighed in favor of her conclusion that Appellant is an SVP, Appellant essentially asks this Court to reweigh the expert testimony and reach a different result which we cannot do. *See Commonwealth v. Hollingshead*, 111 A.3d 186, 194 (Pa.Super. 2015) (stating "[w]e, as an

appellate court, are required to view the evidence in the light most favorable to the Commonwealth when reviewing the sufficiency of the evidence for an SVP determination.").

The trial court made a credibility determination and chose to believe Dr. Valliere over Dr. Lorah. We may not disturb that credibility determination. ***Commonwealth v. Meals***, 590 Pa. 110, 912 A.2d 213 (2006) (holding this Court erred in reweighing the SVP evidence presented to the trial court to give more weight to factors that were absent than to those found and relied upon by the trial court.). Therefore, we shall not disturb the trial court's determination of Appellant's SVP status. Accordingly, we affirm the order of the trial court designating Appellant a sexually violent predator.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/2021