J-S35028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAMON FELICIANO-ALACAN | : | |
| | : | |
| Appellant | : | No. 635 MDA 2021 |

Appeal from the Judgment of Sentence entered April 27, 2021,
in the Court of Common Pleas of Berks County,
Criminal Division at No(s): CP-06-CR-0001977-2017.

BEFORE: OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: JANUARY 21, 2022**

Ramon Feliciano-Alacan appeals from the judgment of sentence imposed following the entry of his guilty pleas for indecent assault (person less than 13 years of age) and endangering the welfare of a child.[1] Specifically, Feliciano-Alacan challenges the trial court's finding that he is a sexually violent predator ("SVP") subject to notification requirements under Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10-9799.41. After careful consideration, we affirm.

Between 2002 and 2010, Feliciano-Alacan had indecent contact with his minor daughter, R.S., on multiple occasions from the time R.S. was 6 or 7

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3126(a)(7), 4303(a)(1).

years of age until she was thirteen or fourteen years of age. Among other sexual abuses, Feliciano-Alacan rubbed his penis against R.S.'s vagina while she was unclothed, touched her vagina with his hands, masturbated and ejaculated on her on numerous occasions, sucked her breasts when they began to develop, and, on at least one occasion, penetrated her vagina with his penis.

In March 2017, Feliciano-Alacan was arrested and charged with numerous sexual offenses, including rape of a child. On June 15, 2018, Feliciano-Alacan pleaded guilty to indecent assault (person less than 13 years of age) and endangering the welfare of a child. The trial court ordered an assessment by the Sex Offender Assessment Board ("SOAB") as to whether Feliciano-Alacan should be designated as an SVP pursuant to SORNA. Feliciano-Alacan elected not to participate in the assessment. In September 2018, the SOAB issued its recommendation that Feliciano-Alacan be designated as an SVP. The Commonwealth motioned the trial court to conduct a hearing on the matter. In response, Feliciano-Alacan filed motions to bar an SVP hearing and to prevent the imposition of sex offender notification requirements pursuant to SORNA. The trial court deferred an SVP hearing while certain cases challenging the constitutionality of SORNA's registration, notification, and counseling requirements were pending before our Supreme

Court. On August 28, 2020, following the High Court's resolution of certain of those cases,[2] the trial court denied Feliciano-Alacan's motions.

On March 17, 2021, the trial court conducted an SVP hearing. The Commonwealth presented the expert report and testimony of Veronique Valliere, Psy.D., a licensed psychologist and SOAB member. Feliciano-Alacan presented the expert report and testimony of Christopher Lorah, Ph.D., a licensed psychologist.[3] The trial court summarized the testimony provided by the experts at the SVP hearing as follows:

> Dr. Veronique Valliere opined that [Feliciano-Alacan] meets the criteria for Other Specified Paraphilic Disorder to children and frotte[u]rism that served as the impetus to his offending and that he engaged in predatory behavior as delineated in her report. She opined that his disorder is related to a future likelihood of re-offense. The sexual attraction was to his prepubescent daughter when she was between the ages of six and thirteen. When an attraction turns into behavior that disrupts somebody's life or is causing the individual mental and emotional distress, it becomes a disorder. Not only was [Feliciano-Alacan] in this case attracted to a prepubescent, but the victim was his daughter. Further, in spite of knowing the potential consequences to himself and/or the victim, [Feliciano-Alacan] repeated[ly] engaged in the sexual behavior with a prepubescent child, even after being confronted by the victim; showing that the disorder overrode his volitional control. [Feliciano-Alacan] was willing to risk legal, social, and familial consequences which meets the diagnostic criteria for a paraphilic disorder. This disorder is a lifetime disorder than can be managed but not cured. Dr. Valliere further indicated that while this disorder may go into remission, the person still

---

[2] **_See Commonwealth v. Butler_**, 226 A.3d 972 (Pa. 2020) (holding that the statutory lifetime registration, notification, and counseling requirements applicable to SVPs did not constitute criminal punishment, and the statutory procedure for designating SVPs was constitutionally permissible).

[3] Both expert reports were admitted into evidence.

possesses a predisposition or a likelihood to be reactivated if the individual experiences internal or external situations or a lack of structure or access to victims. The particular cognitive limitations of [Feliciano-Alacan] were discussed as making complex self-management more difficult and noting his treatment needs are more particular than offenders without those limitations. Dr. Valliere pointed out that [Feliciano-Alacan] promoted a relationship that was secretive, assaulting his daughter while she slept and abdicated a caretaking role to promote a relationship for the facilitation of his sexual aggression toward her. She found that this behavior met the statutory definition of predatory behavior. After vigorous cross examination, Dr. Valliere ultimately stood firm with her opinion that based on the statutory definition, [Feliciano-Alacan] met the qualifications to be designated a [SVP].

Dr. Lorah similarly testified as to his report. He opined that Dr. Valliere's diagnosis of Other Specified Paraphilic Disorder to children and frotte[u]rism was incorrect and that the most appropriate diagnosis is Pedophilic disorder. He found that [Feliciano-Alacan] did not have a mental health abnormality that satisfies the longevity and likelihood prongs of the statute which must be proven by clear and convincing evidence to classify a person as a [SVP]. He testified that . . . Feliciano-Alacan would be considered in behavioral remission because he has successfully lived in the community for over five years after the last (known) assault of his daughter in approximately 2010. Dr. Lorah also indicated [Feliciano-Alacan] was less than likely to sexually re-offend because the onset of his diagnosis was when he was in his fifties and he is now over sixty years old, an age where statistically there is a reduced risk of sexual violence.

Trial Court Opinion, 7/2/21, at unnumbered 5-6 (footnotes omitted).

Approximately one week after the hearing, on March 25, 2021, the trial court entered an order designating Feliciano-Alacan as an SVP. On April 27, 2021, the trial court sentenced Feliciano-Alacan. In accordance with a negotiated plea agreement, the trial court imposed an aggregate term of eleven and one-half months to twenty-three months in prison, followed by

twelve years of probation. The trial court also informed Feliciano-Alacan of his registration requirements under SORNA. Feliciano-Alacan filed a timely notice of appeal.[4] Both Feliciano-Alacan and the trial court complied with Pa.R.A.P. 1925.

Feliciano-Alacan raises the following issue for our review:

> Whether the lower court erred in designating [Feliciano-Alacan] as a[n SVP] where the evidence was insufficient to support a finding that [Feliciano-Alacan] has a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses?

Feliciano-Alacan's Brief at 12.[5]

A challenge to a trial court's SVP designation is a challenge to the sufficiency of the evidence, for which our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Meals*, 912 A.2d

---

[4] Feliciano-Alacan indicated in his notice of appeal that he was appealing "from the denial of the motion to bar hearing to determine if [Feliciano-Alacan] is [an SVP] entered on August 28, 2020, the order determining [Feliciano-Alacan] is a[n SVP] and subject to the notification requirements of SORNA entered on March 25, 2021, and the judgment of sentence in this matter entered on April 27, 2021." Notice of Appeal, 6/8/21, at unnumbered 1 (unnecessary capitalization omitted). However, in a criminal action, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions. *See Commonwealth v. Chamberlain*, 658 A.2d 395, 397 (Pa. Super 1995). We have corrected the caption accordingly.

[5] In his concise statement, Feliciano-Alacan stated his sufficiency challenge somewhat differently, averring that "the Commonwealth's expert's diagnosis of Other Specified Paraphilic Disorder to children and frotteurism, is not a mental abnormality that qualifies as a lifelong condition and does not allow for likelihood of re-offense when evaluating [his] characteristics and the facts of this case." Concise Statement, 5/31/21, at 1.

213, 218 (Pa. 2006). When reviewing a trial court's SVP determination, we must view the evidence in a light most favorable to the Commonwealth and may not re-weigh the evidence or substitute our judgment for that of the trial court. *Id*. "We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied." ***Commonwealth v. Geiter***, 929 A.2d 648, 650 (Pa. Super. 2007).

The procedure for "determining SVP status is statutorily-mandated and well-defined." ***Commonwealth v. Dixon***, 907 A.2d 533, 535 (Pa. Super. 2006). Under Revised Subchapter I of SORNA,[6] after a person has been convicted of an offense listed in 42 Pa.C.S.A. § 9799.55, the trial court orders an assessment by the SOAB. ***See*** 42 Pa.C.S.A. § 9799.58(a). The SOAB must assess all individuals convicted of sexually violent offenses to determine whether they should be classified as an SVP and subject to increased registration, notification, and counseling requirements. ***See id***. § 9799.58(b).

When assessing whether a particular offender should be classified as an SVP, the SOAB conducts a fifteen-factor analysis pursuant to § 9799.58(b); ***see also Commonwealth v. Feucht***, 955 A.2d 377, 381 (Pa. Super. 2008) (holding that while no single factor is required or dispositive, the SOAB must consider all factors in § 9799.58(b) in making its assessment). Specifically,

_____

[6] Revised Subchapter I of SORNA applies to sexually violent offenses committed on or after April 22, 1996, but before December 20, 2012.

the SOAB must examine the facts of the current offense, including (i) whether the offense involved multiple victims; (ii) whether the individual exceeded the means necessary to achieve the offense; (iii) the nature of the sexual contact with the victim; (iv) the relationship of the individual to the victim; (v) the age of the victim; (vi) whether the offense included a display of unusual cruelty by the individual during the commission of the crime; and (vii) the mental capacity of the victim. *See* 42 Pa.C.S.A. § 9799.58(b)(1). The SOAB must also consider the defendant's prior offense history, including (i) the defendant's prior criminal record; (ii) whether the defendant completed any prior sentences; and (iii) whether the defendant participated in available programs for sexual offenders. *Id*. § 9799.58(b)(2). Additionally, the SOAB must consider the characteristics of the defendant, including (i) age; (ii) use of illegal drugs; (iii) any mental illness, mental disability or mental abnormality; and (iv) behavioral characteristics that contribute to the defendant's conduct. *Id*. § 9799.58(b)(3). Finally, the SOAB must consider factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense. *Id*. § 9799.58(b)(4). After considering these factors, the SOAB must prepare and submit a written report of its assessment to the district attorney, who may file a praecipe for a hearing on the matter. *Id*. § 9799.58(d), (e)(1).

The trial court's inquiry at an SVP hearing is different from the SOAB's assessment. Whereas the SOAB must consider the fifteen factors listed in §

9799.58(b), the trial court must determine whether the Commonwealth has proven by clear and convincing evidence that the defendant is "a person who has been convicted of a sexually violent offense and who is determined to be a sexually violent predator under § 9799.58 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." *Id*. § 9799.53; *see also Commonwealth v. Butler*, 226 A.3d 972, 992 (Pa. 2020) (stating, an SVP, in addition to having been convicted of a sexually violent offense, is a person "who [has] been individually determined to suffer from a mental abnormality or personality disorder such that they are highly likely to continue to commit sexually violent offenses"). A "mental abnormality" is defined as "[a] congenital or acquired condition . . . that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S.A. § 9799.53. "Predatory" is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id*. A "sexually violent offense" is defined as "a criminal offense specified in section

9799.55 (relating to registration) committed on or after April 22, 1996, but before December 20, 2012, for which the individual was convicted." **Id**.[7]

Here, Feliciano-Alacan does not dispute that his guilty plea to the charge of indecent assault (person less than 13 years of age) constitutes a conviction for a sexually violent offense under § 9799.55. Instead, Feliciano-Alacan claims that the trial court abused its discretion when it found him to be an SVP based on the testimony of Dr. Valliere. Feliciano-Alacan argues that Dr. Valliere's opinions were flawed, biased, and based on assumptions that were not supported by the evidence. He claims that Dr. Valliere made assumptions regarding when R.S.'s breasts developed, that Feliciano-Alacan's arousal to children can transgress prepubescence, and that Feliciano-Alacan might not be in remission even though he had been in the community for several years without any reports of reoffending. Feliciano-Alacan further asserts that, by opining that all sex offenders have unknown victims, Dr. Valliere essentially concluded that he has committed undetected sexual offenses. Feliciano-Alacan points out that, although Dr. Valliere testified that she is not able to determine remission unless she specifically speaks with the offender or has done further diagnostic assessments, she nevertheless opined that he is not in remission even though she never met with him. Feliciano-Alacan contends

---

[7] "[T]he statute does not require proof of a standard or diagnosis that is commonly found and/or accepted in a mental health diagnostic paradigm." **Commonwealth v. Hollingshead**, 111 A.3d 186, 190 (Pa. Super. 2015) (citation omitted).

that, while Dr. Valliere conceded that she did not have enough information about him to know what kind of relationship he had with his daughter, she opined that his actions were predatory because "he advocated a parental relationship and promoted a new relationship with [R.S.] in order to facilitate victimization." Feliciano-Alacan's Brief at 18 (quoting N.T., 3/17/21, at 12, 18).

Finally, Feliciano-Alacan asserts that Dr. Valliere's report conceded the absence of several of the factors listed in § 9799.58(b), including: that his offenses did not involve multiple victims; he did not do more than was necessary to gain compliance from R.S.; there is nothing in the offense information to suggest that pain, cruelty, terror, or humiliation of R.S. were sources of arousal for him; R.S. was not unusually compromised; he had no prior criminal records, criminal sentences, or history of failed treatment; and drugs and alcohol played no role in his offenses. Based on these arguments, Feliciano-Alacan contends that Dr. Valliere's assessment was not individualized and consisted of sweeping generalizations based on the offenders she treated in the past and the assumptions she makes about all sex offenders.

Importantly, on a challenge to the sufficiency of the evidence supporting an SVP determination, "an expert's opinion, which is rendered to a reasonable degree of professional certainty, is itself evidence." ***Commonwealth v. Fuentes***, 991 A.2d 935, 944 (Pa. Super. 2010) (*en banc*); ***see also***

*Commonwealth v. Feucht*, 955 A.2d 377, 382 (Pa. Super. 2008) (holding that "a [SOAB] report or opinion that the individual has an abnormality indicating the likelihood of predatory sexually violent offenses is itself evidence"). Therefore, an argument that the expert's diagnosis was not fully explained, did not square with accepted analyses of the disorder, or was simply erroneous, would affect the weight, and not the sufficiency, of the expert's evidence. *See Commonwealth v. Meals*, 912 A.2d 213, 223 (Pa. 2006).

Here, Dr. Valliere's expert report and opinions, which were rendered to a reasonable degree of professional certainty, were, in fact, evidence. Thus, Feliciano-Alacan's arguments that Dr. Valliere's opinions were flawed, biased, and based on assumptions that were not supported by the evidence go to the weight, and not the sufficiency, of the evidence. *See Feucht*, 955 A.2d at 382 (holding that "while a defendant is surely entitled to challenge [a report or opinion by a member of SOAB] by contesting its credibility or reliability before the SVP court, such efforts affect the weight, not the sufficiency of the Commonwealth's case"); *see also Fuentes*, 991 A.2d at 944-45 (holding that a challenge to an expert opinion rendered with a reasonable degree of professional certainty implicates the weight of the evidence, which is properly addressed by the trial court). As Feliciano-Alacan has not preserved any weight of the evidence claim, his challenge to the weight to be accorded to Dr. Valliere's opinions is waived.

Moreover, after a careful review, and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude the evidence was sufficient to support the trial court's designation of Felciano-Alacan as an SVP. In undertaking her assessment, Dr. Valliere reviewed numerous documents, including the report of suspected child abuse to law enforcement, the Childline Report of Suspected Child Abuse and Neglect, the criminal investigation, the affidavit of probable cause, the criminal complaint, R.S.'s journal entries, the presentence investigation report, and psychological reports prepared by other professionals. SOAB Report, 8/22/18, at 1. Dr. Valliere explained that, even though Feliciano-Alacan declined to participate in the SOAB's assessment, the absence of an interview did not preclude the SOAB's ability to assess his behavior through a review of the records documenting his repeated sexual behaviors. *Id*. at 2-3. Dr. Valliere discussed each of the fifteen factors listed in § 9799.58(b). *Id*. at 4-5.

Based on her review, Dr. Valliere concluded that Feliciano-Alacan meets the criteria for a paraphilic disorder (mental abnormality), given that he sought sexual gratification from a child repeatedly over six years. *Id*. at 5. Dr. Valliere explained that this behavior is diagnostic of a deviant sexual arousal pattern to children. *Id*. Dr. Valliere further explained that the diagnosis of Other Specified Paraphilic Disorder to Children requires both a deviant sexual arousal pattern to children that has persisted for six or more months and that this disorder has motivated behavior that has victimized

- 12 -

another. *Id*. Based on Feliciano-Alacan's history of sexually assaulting his daughter over six years, Dr. Valliere concluded that he met the diagnosis for Specified Paraphilic Disorder to Children, which is considered a congenital or acquired condition. *Id*. Dr. Valliere further concluded that Feliciano-Alacan's behavior also demonstrated an arousal to the non-consensual rubbing of his genitals against another, which is referred to a frotteurism. *Id*. In making these diagnoses, Dr. Valliere concluded that Feliciano-Alacan's paraphilic disorder is a lifetime condition that can be managed but not cured. *Id*. at 6. She further concluded that Feliciano-Alacan's condition overrode his emotional and volitional control because he repeatedly engaged in sexual behavior with a prepubescent child despite being confronted by R.S., and knowing the potential consequences to her and to himself. *Id*. Finally, Dr. Valliere concluded that Felicino-Alacan's indecent contact with his daughter fit the statutory definition of predatory behavior, and that he had a disorder related to a future likelihood of re-offense. *Id*.

Dr. Valliere's report, along with her testimony at the SVP hearing,[8] provided the trial court with an expert opinion that Feliciano-Alacan met each of the elements required to classify him as an SVP. Where, as here, "the expert's report and testimony support the trial court's finding that [an appellant] was an SVP, there is no basis for granting sufficiency relief."

---

[8] *See* N.T., 3/17/21, at 7-22.

- 13 -

*Fuentes*, 991 A.2d at 944 (*quoting* *Meals*, 912 A.2d at 223); *see also* *Hollingshead*, 111 A.3d at 194 (holding it would not disturb trial court's decision to credit Commonwealth's expert witness over defense expert witness on a challenge to the sufficiency of an SVP determination).

Accordingly, we affirm the order of the trial court designating Feliciano-Alacan as an SVP.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/21/2022